490 So.2d 365 (1986)
STATE of Louisiana
v.
Alvin K. SMITH.
No. KA 85-1383.
Court of Appeal of Louisiana, First Circuit.
May 28, 1986.
Writ Denied October 3, 1986.
*366 Bryan Bush, Dist. Atty., Baton Rouge, by Premila Burns, Asst. Dist. Atty., for plaintiff-appellee.
Lewis O. Unglesby, Baton Rouge, for defendant-appellant.
Before CARTER, SAVOIE and ALFORD, JJ.
CARTER, Judge.
This is an appeal by defendant, Alvin K. Smith, Jr., from a second degree murder conviction.

FACTS
On the evening of February 27, 1984, Alvin K. Smith, Jr. fatally wounded his estranged wife, Janet Smith, using a butcher knife. The incident took place in her home in Baton Rouge, Louisiana. At approximately *367 9:00 p.m. that evening, Detective Eberhart of the East Baton Rouge Parish Sheriff's Department responded to a call at 3935 Country View (Janet Smith's residence) concerning what he believed to be a burglary in progress. The Smith's twelve-year-old daughter Dory, who was hysterical, had phoned the Sheriff's Department. When Detective Eberhart arrived, he found Janet Smith lying on the kitchen floor with a knife near her body. Detective Eberhart also found Dory crying and pointing to defendant, stating "He's the one that hurt my momma." After the defendant was handcuffed and read his Miranda rights, he told Detective Eberhart that he had been served with child support papers earlier in the day and that he was going to Janet Smith's residence to discuss this with her. He then stated, "I had to do it. She was screaming and hollering. I had to hurt her. I couldn't help it." Thereafter, emergency medical personnel arrived and began attending to Mrs. Smith, who died about half an hour later at a local hospital.
After the defendant was transported to a nearby Sheriff's Office Substation, he made another statement indicating, for the first time, that Mrs. Smith had attacked him with a knife.
The next day, the coroner's examination revealed that Mrs. Smith's body had sixteen lacerations of various lengths, including some defense wounds on her hands and arms. The fatal wound was a stab wound in her back, approximately four inches deep, which had penetrated her left lung. In addition to these wounds, there were four small puncture wounds in her abdomen, which were made with an ice pick or other similar object. There were also several abrasions on her arms and legs. East Baton Rouge Parish Coroner Dr. Hypolite Landry testified that Mrs. Smith died as a result of blood loss from these wounds, primarily from the stab wound to the back.
Explaining why he went to Mrs. Smith's home, the defendant testified that, earlier in the day, he had been served with a petition demanding a large increase in child support. He stated that he went to see Mrs. Smith, but that no one was home. He then drove to a nearby convenience store to purchase something, and he pulled in next to Mrs. Smith's car. He testified that she invited him to follow her home because she wanted to talk to him.
The defendant's testimony, however, was contradicted by the testimony of Kay Hall, a close friend of Mrs. Smith. Ms. Hall testified that, on the evening in question, she received a call from Mrs. Smith, who was at a convenience store pay telephone. Mrs. Smith had just seen defendant driving in her neighborhood and expressed concern for her safety. Mrs. Smith asked Ms. Hall to come over to her house, but Ms. Hall declined. Mrs. Smith asked Ms. Hall to call her at home in a few minutes. When Ms. Hall called, Mrs. Smith answered and said that the defendant was there. Ms. Hall called back two more times within the next half hour to check on Mrs. Smith. However, when she called the last time, a Sheriff's deputy answered.
At trial, the defendant admitted that he stabbed his wife. However, he argued that she attacked him with the knife and that, after a struggle, he fell on top of her and the knife went into her back. The defendant testified that he and the deceased had had a troubled relationship for several years and that Mrs. Smith had been physically aggressive toward him on several occasions. One such incident was confirmed by A.K. Smith, Sr., who testified that he had observed Mrs. Smith chase defendant through the house with a butcher knife. Thiel Amos, a former Sheriff's deputy, testified about another fight between the defendant and Mrs. Smith. The former deputy related that during that incident, defendant was forced to physically restrain Mrs. Smith until the police arrived at his apartment. The defense also called Mr. and Mrs. Roger Denson, both of whom testified that, in early 1984, the defendant was visiting at their home when Mrs. Smith knocked on the door and asked to see him. They testified that she was physically and verbally abusive toward the defendant and *368 that he pushed her outside the house and locked the door.
In the past, the defendant had always been able to physically control his wife, whom he outweighed by forty-five to fifty pounds. The defendant testified that this situation was similar to past incidents in which his wife had attempted to harm him, except that this time he was unfamiliar with the house and was, therefore, unable to escape from her.
Defendant was charged by indictment with the second degree murder of his estranged wife, Janet Smith, in violation of LSA-R.S. 14:30.1. He pled not guilty and later changed his plea to not guilty and not guilty by reason of insanity. A Sanity Commission subsequently determined that the defendant was competent to stand trial. By a vote of 10-2, the jury found defendant guilty as charged. The defendant subsequently received the mandatory sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.[1] The defendant has appealed, alleging two assignments of error, viz.:
1. The evidence is insufficient to support the defendant's conviction of second degree murder; and
2. The trial court erred in failing to grant a motion for new trial or motion to reduce the sentence to manslaughter.

ASSIGNMENT OF ERROR NO. 1

(Self-Defense)
Defendant contends that the second degree murder conviction is contrary to the law and the evidence in that the state failed to prove beyond a reasonable doubt that the offense was not committed in self-defense.
In his brief, the defendant cites State v. Shapiro, 431 So.2d 372 (La.1982), and State v. Graham, 422 So.2d 123 (La.1982), for the proposition that, when reviewing the sufficiency of evidence, the circumstantial evidence rule (LSA-R.S. 15:438) must be applied independently of and in addition to the Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review. We disagree.
In State v. Nealy, 450 So.2d 634, 636-37 (La.1984), the Louisiana Supreme Court made the following comments concerning the standard of review for the sufficiency of evidence to be employed by appellate courts:
The constitutional standard of review for the sufficiency of evidence to support a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The statutory rule as to circumstantial evidence is that assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. This statutory rule is not a purely separate test from the Jackson standard to be applied instead of a sufficiency of the evidence test whenever the state relies on circumstantial evidence to prove an element of the crime. State v. Wright, 445 So.2d 1198 (La.1984). Ultimately, the Jackson standard is the objective standard for testing the overall evidence, *369 direct and circumstantial, for reasonable doubt. State v. Wright, supra; State v. Sutton, 436 So.2d 471 (La.1983). The statutory rule provides an evidentiary guideline for the jury when considering circumstantial evidence and facilitates appellate review of whether a rational juror could have found the defendant guilty beyond a reasonable doubt. Exclusion of every reasonable hypothesis of innocence is therefore a component of the more comprehensive reasonable doubt standard, where circumstantial evidence is used to convict. Thus, although the circumstantial evidence rule (La. R.S. 15:438) may not establish a stricter standard of review than the more general reasonable juror's reasonable doubt formula, it emphasizes the need for careful observance of the usual standard and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence. State v. Wright, supra; State v. Sutton, supra; State v. Chism, 436 So.2d 464 (La.1983).
A homicide is justifiable when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger. LSA-R.S. 14:20. In a homicide prosecution where defendant asserts the defense of self-defense, the state has the burden of proving, beyond a reasonable doubt, that the homicide was feloniously committed and was not perpetrated in self-defense. State v. Savoy, 418 So.2d 547 (La.1982).
Thus, the issue is whether a rational factfinder, viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that the homicide was not committed in self-defense. See State v. Matthews, 464 So.2d 298 (La.1985).
In the case sub judice, there were no eyewitnesses (other than defendant) to the confrontation. Although the defendant and the victim's daughter, Dory, was in the home during the incident, she did not actually observe anything because she was asleep upstairs at the time. Therefore, the only evidence presented to establish what happened was the physical and medical evidence and the testimony and statements of the defendant.
The defendant testified that he was attacked by his wife, who was armed with a kitchen knife. The defendant stated that, since he was unable to escape, he was forced to struggle with his wife in order to gain control of the knife. The defendant's theory pertaining to the fatal stab wound was that the force of his weight, in either falling or rolling on top of his wife during the struggle, caused the knife to bend as it penetrated her back. Yet, in analyzing the defendant's theory of self-defense in this case, it becomes clear that the defendant's story conflicts completely with the physical and medical evidence presented.
The coroner's examination revealed the fatal knife wound to the back, sixteen knife lacerations, and four stab wounds with an ice pick or similar object. Neither Dr. Landry nor Dr. McQuown (the defendant's medical expert) was able to determine the order in which the wounds were inflicted upon Mrs. Smith. However, whether the fatal stab wound to Mrs. Smith's back was inflicted first or last, either possibility tends to negate the defendant's theory of self-defense. Both of the medical experts testified that the stab wound to Mrs. Smith's back was very serious.
Therefore, if this serious back wound occurred first, and the defendant then had possession of the knife, he was unjustified in continuing to stab Mrs. Smith because he was no longer in imminent danger of losing his life or receiving great bodily harm. However, if the numerous lacerations were inflicted first, and Mrs. Smith was then stabbed in the back when the defendant fell or rolled on top of her, the defendant should have had a considerable amount of blood on his shirt and person. However, defendant had only a few small blood stains on his shirt.
*370 Furthermore, defendant received no injuries of any kind. The victim, however, had several defense-type wounds on her hands and arms. Dr. McQuown testified that some of these wounds could not have been inflicted if Mrs. Smith was holding the knife. Therefore, even if Mrs. Smith attacked the defendant with a knife, it is certain that at some point he had to have disarmed her in order to have inflicted these type wounds. Once the defendant had disarmed Mrs. Smith, he was no longer in imminent danger of losing his life or receiving great bodily harm and, therefore, further stabbing with two different types of weapons over various portions of her body was unjustified and not done in self-defense.
After carefully reviewing the evidence, we find that a rational trier of fact could have concluded that the state carried its burden of proving beyond a reasonable doubt that the defendant's actions were not taken in self-defense. See State v. Garcia, 483 So.2d 953 (La.1986).

ASSIGNMENT OF ERROR NO. 2
Defendant also contends that the evidence was insufficient to support a conviction of second degree murder, but that the evidence at best supports the responsive verdict of manslaughter.
In pertinent part, LSA-R.S. 14:30.1 defines second degree murder as "the killing of a human being: (1) When the offender has a specific intent to kill or to inflict great bodily harm." LSA-R.S. 14:10 defines specific criminal intent as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act".
Specific intent is a state of mind which need not be proven as a fact but may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Boyer, 406 So.2d 143 (La. 1981).
LSA-R.S. 14:31 provides:
Manslaughter is: (1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed.
The existence of "sudden passion" and "heat of blood" are not elements of the offense, but rather are factors in the nature of mitigating circumstances which may reduce the grade of homicide. State v. Tompkins, 403 So.2d 644 (La.1981). Having found the elements of second degree murder, the jury then had to determine whether the circumstances indicated that the crime was actually manslaughter. State v. Rayford, 476 So.2d 961 (La.App. 1st Cir.1985). Because the question of provocation is one of fact, the jury must determine whether the offender's blood had actually cooled or whether the average person's blood would have cooled. State v. Rayford, supra.
Thus, the issue remaining is whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have concluded that these mitigating circumstances were not present when the defendant killed his wife.
The record reflects that the jury was aware (through the court's instructions) of the possibility that they could return a responsive verdict of manslaughter. However, the jury concluded that this was a case of second degree murder. It appears that the jury did not believe the defendant's story that his wife attacked him with the kitchen knife. The jury was free to accept or reject the defendant's version of events, since the trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31 (La.App. 1st Cir. *371 1984). The verdict of guilty in this case demonstrates that the jury concluded either (1) that the attack was not provocation sufficient to deprive an average person of his self-control and cool reflection, or (2) that after disarming his wife, an average person's blood would have cooled before he inflicted these numerous wounds upon her.
We conclude that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have concluded that mitigating circumstances, viz. sudden passion or heat of blood caused by provocation sufficient to deprive an average person of his self control and cool reflection, were not present for the following reasons:
1. The jury obviously did not believe defendant's testimony regarding the events leading up to his wife's death and the subsequent conflicting statements;
2. The numerous wounds inflicted over various areas of the body by at least two different weapons indicated a certain time span that is inconsistent with heat of blood or sudden passion; and
3. The defense-type wounds inflicted on the victim's hands.
We are convinced that, when the evidence is viewed in a light most favorable to the state, it is certainly reasonable that a rational trier of fact could have concluded beyond a reasonable doubt that the defendant was guilty of the second degree murder of his estranged wife and that the offense was not manslaughter. See State v. Booker, 444 So.2d 238 (La.App. 1st Cir.1983), writ denied, 446 So.2d 1227 (La.1984).
For the above reasons, these assignments of error are without merit.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Reviewing the record, we note a patent sentencing error. The trial court did not wait the required twenty-four hours, after denying the defendant's motion for new trial, before imposing sentence (LSA-C.Cr.P. art. 873), nor does the record indicate that the defendant waived the waiting period. However, the defendant does not argue or in any way show that he was actually prejudiced by the failure of the trial court to observe the waiting period. Furthermore, since the defendant was convicted of second degree murder, the trial court had no discretion in imposing sentence, and therefore, even if it had waited the twenty-four hour period, the sentence imposed would have been the same (mandatory life imprisonment at hard labor). Therefore, we hold that the failure on the part of the trial court to observe the delay provided for in Article 873 was harmless error. See State v. Mason, 447 So.2d 1134 (La.App. 1st Cir.1984).