593 So.2d 1301 (1991)
STATE of Louisiana
v.
Carl D. JONES.
No. 90 KA 1764.
Court of Appeal of Louisiana, First Circuit.
December 27, 1991.
*1306 Edward Songy, Jr., Asst. Dist. Atty., for State.
John Bemiss, Jr., Port Allen, for defendant.
Before SHORTESS, LANIER and CRAIN, JJ.
SHORTESS, Judge.
Carl D. Jones (defendant) was charged by grand jury indictment with second degree murder, LSA-R.S. 14:30.1. He pled not guilty and, after a jury trial, was found guilty of the responsive offense of manslaughter, LSA-R.S. 14:31. He received a sentence of 21 years at hard labor, with credit for time served. Subsequently, the trial court granted defendant an out of time appeal. Defendant alleges 14 assignments of error, summarized as follows:
1. The trial court erred in allowing two photographs of the victim to be admitted into evidence.
2. The trial court erred in allowing a state expert witness, Sybil Guidry, to refer to a fingerprint "in blood" when a proper foundation had not been established that the substance containing the fingerprint was actually identified as blood.
3. The trial court erred in allowing the prosecutor to improperly lead an expert witness, Sybil Guidry.
4. The trial court erred in allowing an expert witness, Charles Andrews, to testify about enlarged photographs of fingerprints and in allowing these photographs to be introduced into evidence without a proper foundation.
5. The trial court erred in allowing Kenneth Dunn to be qualified as an expert in fingerprint identification and comparison.
6. The trial court erred in allowing an expert witness, Kenneth Dunn, to testify about State Exhibits 26 and 27 and in allowing these exhibits to be introduced into evidence without a proper foundation.
7. The trial court erred in allowing State Exhibits 26 and 27 to be introduced into evidence without a proper foundation and without proof of the chain of custody of these photographs.
8. The trial court erred in allowing State Exhibit 28 to be introduced into evidence without a proper foundation and without proof of the chain of custody of this photograph.
9. The trial court erred in allowing State Exhibit 29 to be introduced into evidence without a proper foundation and without proof of the chain of custody of this photograph.
10. The evidence was insufficient to support the instant conviction. (Briefed as 9(b).)
11. During rebuttal closing argument, the prosecutor improperly referred to the defendant's failure to present expert testimony. (Briefed as 9(a).)
12. The trial court erred in imposing an excessive sentence.
13. The trial court erred in denying the defendant's motion for a change of venue. (Briefed as i.)
14. The trial court erred in denying the defendant's motion for a mistrial based on the State's use of its peremptory challenges to excuse prospective jurors solely on the basis of their race. (Briefed as ii.)
The victim, Debra Dean, was a cashier at a Jr. Food Mart in Maringouin, Louisiana. On Friday evening, June 20, 1986, the victim and another employee, Cosima Lockman, *1307 were working at the store. Defendant was seen at the store that afternoon and evening. Ms. Lockman and her brother, Ezekiel Lockman, gave the victim a ride home from work in the early morning hours of Saturday, June 21. Both Cosima and Ezekiel Lockman observed defendant riding a bicycle in the direction of the victim's apartment.
The victim did not report to work on June 21. The next morning, Sunday, June 22, the victim's father, Beverly Macburton, entered the victim's apartment and found her lifeless body on the bed. The victim's throat had been cut. Her upper body and the surrounding portion of the bed were covered with blood. A yellow note pad on the floor next to the victim's bed contained a bloody thumbprint and palm print. Several small fragments of negroid hair were found on the victim's body and in her bed. The subsequent investigation focused on defendant. On June 27, 1986, Iberville Parish Sheriff's deputies executed a search warrant for defendant's home and seized a pair of defendant's leather work boots.
At the trial, Cosima Lockman testified that she observed defendant in the store twice on the evening of June 20. She testified that, when she last saw defendant that evening, he was on a bicycle approximately one-half mile from the victim's apartment. She also testified defendant had a knife pouch on his side that evening.
Ezekiel Lockman testified that he saw defendant at the store on Friday afternoon, June 20; that defendant was wearing a black knife pouch on his side; and that after giving the victim a ride home, he observed defendant riding a bicycle approximately one mile from the victim's apartment.
Two other state witnesses, Clyde Dixon and Eric Marshall, observed defendant at the Jr. Food Mart on Friday evening, June 20. Marshall observed a knife scabbard on defendant's side but did not remember whether it contained a knife. Marshall also testified defendant was wearing blue jeans and either work boots or tennis shoes.
Macburton testified that his daughter lived alone; that he went to her apartment at approximately 2:15 p.m. on Saturday, June 21; that he observed a piece of glass missing from the door which had been intact on his last visit on Thursday, June 19; that the door to the apartment was locked; that he knocked on the door, but no one answered; that he assumed she had already gone to work, so he left; and that he returned Sunday morning, entered the apartment, and found her dead.
Ronald Smith, the owner of the victim's apartment, testified that he picked up a piece of glass on the ground beside her door while cutting the grass on Saturday morning, June 21. He placed the glass on the concrete walkway and continued cutting the grass.
Dr. James Freeman, Iberville Parish Coroner, testified the victim bled to death as a result of the wound to her neck. This wound severed the victim's trachea, esophagus, carotid arteries, jugular veins, and vagus nerves. The victim also had a laceration on the left side of her head. Freeman described a superficial incision extending from between the victim's legs to her abdomen. Because there was little bleeding associated with this wound, Freeman concluded it was inflicted after the victim's throat was cut. Freeman also described several small lacerations on the victim's hands which he characterized as "defense wounds."
Shirley Phillips, a forensic scientist at the Louisiana State Police Crime Lab, testified both the victim and defendant had type "O" blood. She examined the work boots seized from defendant and was able to detect traces of human blood around the soles, but it was insufficient in quantity to conduct blood typing analysis. Phillips testified she examined several small fragments of hair found on the victim's body and in her bed and discovered that they had negroid characteristics. However, they *1308 were not sufficient for further testing or comparison. Finally, Phillips testified that the blood samples taken from the yellow note pad contained type "O" human blood.
The state's fingerprint experts, Sybil Guidry, who was employed by the Louisiana State Police, and Kenneth Dunn, who was employed by the Federal Bureau of Investigation, both testified the bloody right thumbprint on the yellow note pad matched defendant's right thumbprint. Dunn also testified the bloody palm print on the yellow note pad was defendant's.
ASSIGNMENT OF ERROR NUMBER ONE:
Defendant contends that the trial court erred in allowing two photographs of the victim to be admitted into evidence over his objection. Specifically, he argues that the sole purpose of these photographs was to inflame and prejudice the jury against him.
Photographs which illustrate or shed light upon any fact or issue in the case or are relevant to describe the person, place or thing depicted are generally admissible. State v. Burge, 486 So.2d 855, 863 (La.App. 1st Cir.), writ denied, 493 So.2d 1204 (La.1986). Postmortem photographs of murder victims are admissible to prove corpus delicti, to corroborate other evidence establishing the cause of death, and to provide positive identification of the victim. The admission of gruesome photographs will not be overturned unless it is clear that the prejudicial effect of the photographs outweighs their probative value. State v. Hosford, 572 So.2d 242, 245 (La. App. 1st Cir.1990), writ denied, 576 So.2d 27 (La.1991).
State Exhibit 5 is a photograph of the side of the victim's head which was taken at the morgue. It depicts a laceration on the side of the victim's head but cannot be considered gruesome. On the other hand, State Exhibit 3 is extremely gruesome. It depicts the victim's nude body lying on the bed. It shows the deep wound to her throat and a great deal of blood on the victim's upper body and the top portion of the bed. Nevertheless, the probative value of State-3 far outweighs its prejudicial effect. In addition to the victim's fatal wound, State-3 also depicts the yellow note pad (which contained defendant's bloody fingerprint and palm print) and its position on the floor next to the bed.
State-3 and 5 are not repetitive. The record indicates the trial court examined other photographs of the crime scene and the victim's body and rejected two photographs which were repetitious or of little probative value. After examining State-3 and 5, we find no error in the trial court's ruling that the probative value of these photographs outweighed any prejudicial effect and conclude they were properly admitted into evidence over defendant's objection.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER TWO:
Defendant contends the trial court erred in allowing a state expert witness, Sybil Guidry, to refer to a fingerprint "in blood" when a foundation had not been established that the substance contained in the fingerprint was blood.
During her testimony, Guidry referred to a fingerprint in blood. Defendant objected that the state had not yet established that the substance containing the fingerprint was blood. The trial court overruled the objection. This ruling was proper. First, we note that an expert witness or scientific analysis is not required to identify blood under all circumstances. Blood is such a common thing that a lay witness may properly testify he recognizes it as such. State v. Lee, 340 So.2d 1339, 1344 (La.1976), cert. denied, 431 U.S. 941, 97 S.Ct. 2658, 53 L.Ed.2d 260 (1977); State v. Skipper, 284 So.2d 590 (La.1973). Furthermore, as noted by the prosecutor when answering defendant's objection, previous testimony by another state expert witness, Shirley Phillips, had established that the *1309 substance containing the fingerprint was type "O" human blood.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER THREE:
Defendant contends the trial court erred in allowing the prosecutor to improperly lead a state expert witness, Sybil Guidry.
During her testimony, Guidry referred to State Exhibit 8, a sheet of yellow legal paper containing a fingerprint in blood. She testified that when she received this exhibit from Charles Andrews on June 22, 1986, the ridge detail in the fingerprint was visible. However, at the time of the trial, the ridge detail was not visible. The prosecutor then asked: "So it's faded is what you are saying?" Guidry answered in the affirmative. Defense counsel objected and argued that the prosecutor was leading the witness and that the question was misleading.
The trial court noted that the prosecutor could lead his own expert witness and overruled the objection. It is within the court's discretion to permit leading questions. State v. Fallon, 290 So.2d 273, 291 (La.1974).
The trial court, in any event, did not abuse its discretion,[1] even assuming, arguendo, that the trial court erred in permitting the prosecutor to ask Guidry a leading question, any such error was harmless beyond a reasonable doubt. Another state expert witness, Kenneth Dunn, testified after Guidry. Dunn testified he treated the fingerprint on State-8 with a chemical commonly referred to as TMB. He explained that the chemical overreacted and eliminated any identifiable characteristics present in the fingerprint. Accordingly, since Dunn's testimony was essentially the same as the allegedly objectionable testimony by Guidry that the fingerprint had faded, any error in allowing Guidry's testimony on this point was harmless beyond a reasonable doubt. La.C.Cr.P. art. 921. This assignment of error is without merit.
ASSIGNMENTS OF ERROR NUMBERS FOUR, SIX, SEVEN, EIGHT, AND NINE:
All five of these assignments of error relate to State Exhibits 25 through 29. Specifically, defendant contends these exhibits were introduced into evidence without a proper foundation or proof of chain of custody.
To be admitted at trial, demonstrative evidence must be identified. This identification can be visual, that is, by testimony at trial that the object exhibited is the one related to the case. Alternatively, the evidence can be identified by a chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it was offered into evidence. State v. Pittman, 486 So.2d 895, 896 (La. App. 1st Cir.1986). In order to introduce demonstrative evidence, it suffices if the foundation laid establishes that it is more probable than not that the object is the one connected to the case. State v. Serigny, 481 So.2d 659, 663 (La.App. 1st Cir.1985), writ denied, 484 So.2d 667 (La.1986). Lack of positive identification or a defect in the chain of custody goes to the weight of the evidence rather than to its admissibility. Ultimately, a chain of custody or connexity of the physical evidence is a factual matter for determination by the jury. State v. Spooner, 550 So.2d 1289, 1304 (La.App. 1st Cir.1989), writ denied, 566 So.2d 394 (La. 1990).
Generally, photographs are admissible when they are shown: (1) to have been accurately taken; (2) to be a correct representation of the subject in controversy; and (3) to shed light upon the matter before the court. State v. Gordon, 582 So.2d 285, 290 (La.App. 1st Cir.1991). It is *1310 well settled that a photograph need not be identified by the person who took it to be admissible. State v. Kimble, 546 So.2d 834, 839 (La.App. 1st Cir.1989). A proper foundation for the admission of a photograph is laid when a witness having personal knowledge of the subject depicted by the photograph identifies it as such. State v. Jones, 496 So.2d 638, 640 (La.App. 1st Cir. 1986).
Assignment of error number four relates to State-25. Defendant contends that this exhibit was introduced into evidence without the proper foundation. During Charles Andrews' testimony, it was established that State-25 contained two enlarged photographs. One photograph was labeled "INKED"; the other photograph was labeled "LATENT." According to Andrews, the two enlarged photographs in State-25 were made from the negatives in State-23 and 24. Andrews testified that the negative in State-23, the photograph of the right thumbprint from the yellow note pad, was used to make the enlarged photograph labeled "LATENT," and the negative in State-24, the photograph of defendant's taped right thumbprint, was used to make the enlarged photograph labeled "INKED." At this point, the defense objected on the basis of a lack of foundation. Specifically, counsel objected that the person who made the photographs was not identified. The prosecutor correctly responded that it was not necessary to introduce the testimony of the person who made the photographs to introduce them into evidence. The trial court overruled the objection and allowed State-25 to be admitted into evidence.
In our view, the trial court correctly allowed State-25 to be introduced into evidence over defendant's objection. Andrews identified the two enlarged photographs in State-25 and explained their origin. Even assuming, arguendo, that the trial court erred in allowing State-25 to be introduced into evidence over defendant's objection, any such error is harmless beyond a reasonable doubt. Immediately after Andrews testified, Guidry was recalled to the stand. She explained that State-25 was a "blow-up" prepared for court illustration purposes. She used this exhibit to explain to the jury how she located the points of identification when comparing the "INKED" print to the "LATENT" print. However, Guidry specifically testified that her identification of defendant's right thumbprint was made from comparing State-23 and 24 (which were introduced into evidence without objection), rather than the enlarged photographs in State-25. Therefore, even if State-25 was erroneously introduced into evidence, such error was harmless beyond a reasonable doubt. La. C.Cr.P. art. 921.
During the testimony of state expert witness Kenneth Dunn, State-26 through 29 were introduced into evidence over defendant's objections. Defendant asserted a proper foundation and/or chain of custody had not been established prior to admission. Dunn testified that when he received State-8, the yellow note pad containing a bloody right thumbprint and palm print, he had two photographs prepared, one of each print. After the photographs were returned to him, he checked them to make sure they were accurate. He then compared these photographs of the bloody prints to defendant's known fingerprint and palm print and discovered that the bloody right thumbprint matched defendant's right thumbprint. However, Dunn was not able to make a comparison of the bloody palm print. He then treated the bloody palm print with a chemical solution referred to as TMB. This solution enhanced the ridge detail of the palm print but destroyed the ridge detail of the right thumbprint. After treating the prints, he again ordered photographs to be made. He then compared defendant's known palm print to the photograph of the treated palm print and was able to identify it as defendant's.
Dunn identified State-26 as the photograph of the bloody right thumbprint on *1311 the yellow note pad. He identified State-27 as the bloody palm print on the yellow note pad. He also testified he used these two photographs, State-26 and 27, to identify defendant's bloody prints on the yellow note pad. Therefore, although the testimony surrounding these photographs was somewhat confusing, it appears State-26 was the photograph of the bloody right thumbprint taken before treatment with TMB and State-27 was the photograph of the bloody palm print taken after treatment with TMB.
Dunn explained that State-28 and 29 each consisted of enlarged photographs. State-28 consists of photographs of defendant's known right thumbprint (labeled "INKED FINGERPRINT") and his bloody right thumbprint (labeled "LATENT FINGERPRINT"). State-29 consists of photographs of defendant's known palm print (labeled "INKED PALM PRINT") and the bloody palm print (labeled "LATENT PALM PRINT"). According to Dunn, the enlarged latent prints contained in State-28 and 29 were made from the same negatives used to make State-26 and 27.
Considering Dunn's testimony as a whole, we find no error in the admission into evidence of State-26 through 29. While the person who took these photographs was never identified, Dunn specifically testified that State-26 and 27 were taken under his direction and supervision. He also explained he had these photographs enlarged for demonstration purposes and, in fact, used these enlarged photographs (State-28 and 29) in court to make a comparison and identification of defendant's right thumbprint and palm prints. While Dunn testified he checked the accuracy of the first two photographs taken of the bloody right thumbprint and palm prints (one of these photographs being State-26), he never testified he checked the accuracy of the two photographs of the bloody right thumbprint and palm prints taken after treatment with TMB (one of these photographs being State-27). Nevertheless, even assuming, arguendo, that State-27 was erroneously introduced into evidence on the basis that it was never identified as being an accurate depiction of the bloody palm print taken after treatment with TMB, we find no reversible error. Because Dunn testified State-26 is an accurate depiction of the bloody right thumbprint, and because he identified the thumbprint as belonging to defendant, we conclude that any error in admitting State-27 into evidence without its accuracy being established was harmless beyond a reasonable doubt. La.C.Cr.P. art. 921.
For the above reasons, these assignments of error are without merit.
ASSIGNMENT OF ERROR NUMBER FIVE:
Defendant contends that the trial court erred in allowing Kenneth Dunn to be qualified as an expert in fingerprint identification and comparison.
LSA-R.S. 15:466[2] provided:
The test of the competency of an expert is his knowledge of the subject about which he is called upon to express an opinion, and before any witness can give evidence as an expert his competency so to testify must have been established to the satisfaction of the court.
The acceptance of a witness as an expert is a matter entrusted to the discretion of the trial court. Its ruling will not be overturned on appeal absent an abuse of discretion. State v. Lewis, 489 So.2d 1055, 1061 (La.App. 1st Cir.), writ denied, 493 So.2d 1218 (La.1986).
Noting that Dunn had only a high school education with no college or university training in the area of any science, defendant contends that Dunn should not have been qualified as an expert. Defendant also notes that Dunn was not board certified as a fingerprint specialist by any association, academy, or school, nor was he *1312 a member of any organization of forensic scientists. On the other hand, Dunn testified that he had been employed by the FBI for 14-½ years. During that time, he received on-the-job training in fingerprint comparison and identification. Dunn testified that in 1986 alone he made approximately 450,000 fingerprint comparisons. He also testified he previously had qualified as an expert in federal and state courts. Considering the above, we find no abuse of the trial court's discretion in accepting Dunn as an expert witness in fingerprint identification and comparison.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. TEN (NO. NINE (b) IN DEFENDANT'S BRIEF):
Defendant contends the evidence was insufficient to support his conviction. We note that in order to challenge this conviction on the basis of insufficiency of the evidence, defendant should have proceeded by way of a motion for post-verdict judgment of acquittal. See La.C.Cr.P. art. 821. Nevertheless, we will consider a claim of insufficiency of the evidence which has been briefed pursuant to a formal assignment of error. See State v. Tate, 506 So.2d 546, 551 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (La.1987).
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude the state proved the essential elements of the crime and defendant's identity as the perpetrator of that crime beyond a reasonable doubt. See La.C.Cr.P. art. 821; State v. Johnson, 461 So.2d 673, 674 (La.App. 1st Cir.1984). The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review incorporated in Article 821 is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that the fact finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. McLean, 525 So.2d 1251, 1255 (La.App. 1st Cir.), writ denied, 532 So.2d 130 (La.1988).
Defendant was charged with second degree murder, a violation of LSA-R.S. 14:30.1(A)(1), which provides in pertinent part:
(A) Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; ...
However, he was convicted of manslaughter, a violation of LSA-R.S. 14:31(A)(1) which provides, in pertinent part:
Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; ...
In his brief to this court, defendant does not argue that the facts of this case are inappropriate for a manslaughter conviction. Compare State v. Griffin, 540 So.2d 1144, 1149 (La.App. 1st Cir.1989). Instead, he contends that the evidence is insufficient to prove that he killed the victim. Nevertheless, we note the instant verdict of manslaughter apparently represents a "compromise" verdict. Arguably, the crime of manslaughter was not proven because there was no evidence of "heat of blood" or "sudden passion," the mitigating factors which reduce a murder to manslaughter. See State v. Smith, 490 So.2d 365, 370 (La.App. 1st Cir.), writ denied, 494 So.2d 324 (La.1986). However, absent a *1313 contemporaneous objection, a defendant cannot complain if the jury returns a legislatively-approved responsive verdict (such as man-slaughter in this case), even where there is not sufficient evidence to support such a verdict, provided that the evidence is sufficient to support the charged offense. State v. Schrader, 518 So.2d 1024, 1034 (La.1988); State v. Griffin, 540 So.2d at 1149-1150. Here, there can be no doubt that the fatal wound to the victim's neck was inflicted with a specific intent to kill. See LSA-R.S. 14:10(1) and 14:30.1(A)(1). Accordingly, the evidence was sufficient to support a conviction of the charged offense, second degree murder.
The primary issue is whether the evidence was sufficient to prove defendant's identity as the perpetrator of the offense. Defendant was observed at the store where the victim worked by several state witnesses during the afternoon and evening of June 20, 1986. He had been observed with a knife scabbard on his side, although it was never established whether the scabbard contained a knife. One witness testified defendant might have been wearing work boots or tennis shoes that evening. Shortly after midnight on June 21, Cosima Lockman and Ezekiel Lockman gave the victim a ride home. They observed defendant riding a bicycle in the direction of the victim's apartment. The victim failed to report to work on June 21. On the morning of June 22, the victim's father entered her apartment and discovered her lifeless body. A yellow note pad was found on the floor beside the victim's bed. It contained a bloody thumbprint and palm print, subsequently identified as belonging to defendant. Several small fragments of negroid hair were found on the victim's body and in her bed, but they were insufficient for further analysis or identification. Human blood was detected on the boots seized from defendant's home on June 27, 1986, but the quantity was insufficient for further analysis or identification.
Defendant contends the evidence does not exclude a reasonable hypothesis of innocence. He argues that his prints were placed at the scene of the crime after the killing. Considering all of the evidence in this case, especially defendant's bloody thumbprint and palm prints on the yellow note pad found on the floor beside the victim's bed, we conclude the evidence excludes every reasonable hypothesis of defendant's innocence. See State v. Whitaker, 489 So.2d 998, 1005 (La.App. 1st Cir.), writ denied, 494 So.2d 324 (La.1986). When all of the evidence in this case is viewed in a light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt that defendant killed Debra Dean. It would not be reasonable for a fact finder to conclude that these bloody prints were placed in the victim's bedroom by some unknown party.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER 11 (NO. NINE(a) IN DEFENDANT'S BRIEF):
Defendant contends that during rebuttal closing argument, the prosecutor improperly referred to his failure to present expert testimony.
Approximately one-half of defense counsel's closing argument consisted of an attack upon the state's fingerprint evidence and the identification of this evidence by the state's expert witnesses. Thereafter, during rebuttal closing argument, the following colloquy occurred:
Don't forget this for one minute. He makes light of our identifications by two experts. I've already alluded to the fact that these have been available. He's known it. He admits he knew about it. Where is the defense expert? Where is that witness from this stand? He had a right to go have it examined. They've got two of the highest priced lawyers in Baton Rouge, two of the best. Where's their expert from the stand? They had a right to examine this and come in here and tell you, "No, that's not the fingerprint of Carl Jones. That's not his fingerprint." *1314 You know why he's not on that stand? Because they know what his testimony would have been. It's gonna be the exact
MR. WALL: Excuse me, Judge I must respectfully interrupt at this point.
In support of his objection, counsel argued that the issue of whether defendant might have retained his own expert was not properly before the jury and the suggestion he should have introduced such expert testimony was improper. Counsel also argued the prosecutor's argument suggested defendant had an expert who was not called to testify because, if he did so, his testimony would agree with the state's experts. The prosecutor replied he had the right to argue the lack of evidence in the case. The trial court tacitly overruled the objection by noting it and allowing the prosecutor to continue his argument.
We find that the comments quoted above were proper as a direct response to defendant's closing argument because these comments referred to the lack of evidence in support of defendant's argument. See La.C.Cr.P. art. 774; State v. Spears, 525 So.2d 329, 334 (La.App. 1st Cir.), writ denied, 532 So.2d 175 (La.1988). Furthermore, contrary to defendant's assertion in his brief to this court, the prosecutor's comments did not have the effect of shifting the burden of proof to the defense. See State v. Spears, 525 So.2d at 334. For these reasons, this assignment of error is without merit.
ASSIGNMENT OF ERROR NO. TWELVE:
Defendant contends the trial court erred in imposing an excessive sentence. The Code of Criminal Procedure sets forth items which must be considered by the trial court before imposing sentence. La.C.Cr.P. art. 894.1. The trial court need not recite the entire checklist of article 894.1, but the record must reflect that it adequately considered the guidelines. State v. Herrin, 562 So.2d 1, 11 (La.App. 1st Cir.), writ denied, 565 So.2d 942 (La. 1990). In light of the criteria expressed by article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Watkins, 532 So.2d 1182, 1186 (La.App. 1st Cir.1988).
Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). However, the trial court has great discretion in imposing a sentence within the statutory limits; and such a sentence will not be set aside as excessive in the absence of manifest abuse of discretion. State v. Latiolais, 563 So.2d 469, 473 (La.App. 1st Cir.1990).
Before imposing sentence, the trial court stated it had reviewed the presentence investigation report, as well as 59 character reference letters submitted by the defense. The report indicated defendant was a first-felony offender and had no prior criminal record. Referring to the facts of the offense, the trial court noted that this homicide was "vicious," "gory," and "sadistic." The trial court concluded the evidence indicated the offense was committed in a "cruel intentional" manner. The trial court found defendant's drug usage, which was mentioned in the presentence investigation report, and the evidence establishing commission of this offense contradicted the numerous character references offered by the defense. Finally, the trial court concluded defendant was in need of correctional treatment and stated any lesser sentence would deprecate the seriousness of the offense. Contrary to defendant's argument, we find the trial court adequately complied with the article 894.1 guidelines.
In this case, defendant received the maximum sentence of 21 years at hard labor. See LSA-R.S. 14:31. This court has stated the maximum sentence may be imposed only in cases involving the most serious offenses and worst offenders. State v. Easley, 432 So.2d 910, 914 (La.App. 1st *1315 Cir.1983). After reviewing the facts, the trial court referred to the intentional infliction of the victim's injuries and intimated defendant had committed the offense of second degree murder but benefitted from "his attorneys doing an excellent job in achieving the results that were achieved," i.e., a manslaughter conviction. The fact that the evidence might have supported a verdict of second degree murder was an appropriate sentencing consideration. See State v. Heath, 447 So.2d 570, 577 (La.App. 1st Cir.), writ denied, 448 So.2d 1302 (La. 1984). Furthermore, even though defendant had no prior criminal record, we conclude that any person capable of committing this type of homicide is the worst type of offender in the category of manslaughter. Considering the reasons for sentencing given by the trial court and the circumstances of this offense, we find no abuse of discretion in the sentence imposed.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. THIRTEEN (NO. i IN DEFENDANT'S SUPPLEMENTAL BRIEF):
Defendant contends that the trial court erred in denying his motion for a change of venue.
La.C.Cr.P. art. 622 provides:
A change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending.
In deciding whether to grant a change of venue the court shall consider whether the prejudice, the influence, or the other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial.
The burden is upon the defendant to prove that there exists such a prejudice in the collective minds of the community that a fair and impartial trial is impossible. State v. Bennett, 454 So.2d 1165, 1180 (La.App. 1st Cir.), writ denied, 460 So.2d 604 (La.1984). Relevant factors to consider in determining whether to change venue are the nature of the pretrial publicity, the particular degree to which it had circulated in the community, the connection of governmental officials with the release of the publicity, the length of time between the dissemination of the publicity and the trial, the severity and notoriety of the offense, the area from which the jury is to be drawn, other events occurring in the community which either affect or reflect the attitude of the community or individual jurors toward the defendant, and any other factor likely to affect the candor and veracity of the prospective jurors on voir dire examination. Although the trial court possesses a broad range of discretion in this area, the reviewing court is required to make an independent evaluation of the facts to determine whether the accused received a fair trial unfettered by outside influences. State v. Lucas, 482 So.2d 7, 9 (La.App. 1st Cir.1985).
In defendant's brief to this court, he contends that the extensive media coverage of this crime resulted in prejudice against him in the community, thereby reducing his chance of receiving a fair trial. He also contends that the pretrial publicity may have affected the answers of prospective jurors on voir dire examination "to such an extent that they may not have completely answered freely, frankly and honestly."
At the pretrial hearing on defendant's motion for change of venue, the trial court deferred a ruling on the motion until voir dire examination. The prosecutor and defense counsel agreed. After the jury was selected, the trial court denied the motion for a change of venue, noting that a fair and impartial jury had been selected without difficulty. The trial court specifically found no general knowledge of this case in the community or any other influence which might justify a change of venue.
*1316 We find the trial court's ruling was not erroneous. Our review of the voir dire examination indicates no general feeling of prejudice against defendant or other influence which might have affected the prospective juror's answers on voir dire examination. The record contains absolutely no basis for defendant's assertion that pretrial publicity affected the prospective jurors to such an extent that they perjured themselves on voir dire examination. See State v. Bell, 477 So.2d 759, 769 (La.App. 1st Cir.1985), writ denied, 481 So.2d 629 (La. 1986). We conclude that defendant failed to meet the necessary burden for a change of venue.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. FOURTEEN (NO. ii IN DEFENDANT'S SUPPLEMENTAL BRIEF):
Defendant contends that the trial court erred in denying his motion for a mistrial based on the state's use of its peremptory challenges to exclude prospective jurors solely on the basis of their race.
After the 12 petit jurors had been selected and sworn, and the two alternate jurors selected, but before the alternates were sworn, defendant made a Batson motion, alleging the prosecutor had used all 14 of his peremptory challenges against black prospective jurors. The trial court responded that it had not taken note of the race of the prospective jurors. Initially, it was stipulated that the petit jury contained six blacks and six whites and that there were two alternate jurors, one white and one black. Thereafter, an attempt was made to establish the race of the prospective jurors peremptorily challenged by the state. A deputy clerk of court and a deputy sheriff testified 11 of the 14 prospective jurors challenged by the state were black. The defense also offered its notes, indicating that all 14 prospective jurors peremptorily challenged by the state were black. Before the trial court made any ruling, the prosecutor defended his use of peremptory challenges during voir dire examination. The prosecutor stated he did not arbitrarily challenge black prospective jurors. The prosecutor indicated his peremptory challenges were exercised on the basis of the prospective jurors' answers, their demeanor, the way they presented themselves, local concerns that community members might exercise undue influence in the case, "and various other reasons." Subsequently, the trial court denied defendant's motion.
In Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court held that an equal protection violation occurs when the prosecutor, in the trial of a member of a cognizable racial group, exercises peremptory challenges to remove members of the defendant's race from the jury venire for a discriminatory purpose. Batson also set standards for assessing a prima facie case of purposeful discrimination[3] and placed the burden on the prosecution, after such a prima facie showing, to come forth with a neutral explanation for challenging black *1317 jurors that related to the particular case. See State v. Collier, 553 So.2d 815, 817 (La.1989).
Initially, we note that, because the prosecutor offered reasons in support of his peremptory challenges without being asked to do so by the trial court, the trial court never ruled on the issue of whether defendant had established a prima facie showing of intentional discrimination. Nevertheless, once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant made a prima facie showing becomes moot. Hernandez v. New York, ___ U.S. ___, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).
In order to preserve the complaint that the prosecutor's use of peremptory challenge was based on racial discrimination, the defense must make a timely objection. La.C.Cr.P. art. 841. To be timely, the objection must be made before the entire jury panel is sworn. State v. Williams, 524 So.2d 746 (La.1988); State v. White, 535 So.2d 929, 934 (La.App.2d Cir. 1988), writ denied, 537 So.2d 1161 (La. 1989). Defendant made his Batson motion after all 12 petit jurors had been selected and sworn. The two alternate jurors also had been selected, but not yet sworn at the time defendant entered this motion. This court has recently addressed the issue of whether alternate jurors are considered as part of the entire jury panel for purposes of a timely Batson motion. In State v. Lamark, 584 So.2d 686, 695 (La.App. 1st Cir.), writ denied, 586 So.2d 566 (La.1991) we held they are not. Because the Batson objection was first entered only after all 12 petit jurors were selected and sworn, and after the two alternate jurors had been selected, we conclude that this motion was not timely, that the two alternate jurors were dismissed after the trial court's charge to the jury and that, therefore, they did not participate in deliberations further supports this conclusion.
Furthermore, we note the reasons offered by the prosecutor to explain his peremptory challenges should be deemed race neutral unless a discriminatory intent was inherent in those reasons. Hernandez v. New York, 111 S.Ct. at 1866. Moreover, although the prosecutor did not offer specific reasons for the exercise of each peremptory challenge, it might well be argued that his failure to do so was caused by the untimeliness of defendant's Batson motion. Accordingly, for all of the above reasons, we conclude that the trial court did not err in denying defendant's Batson motion. This assignment of error is without merit.
For these reasons, we affirm the conviction and the sentence.
AFFIRMED.
NOTES
[1] The general practice in Louisiana permitting a party to lead his own witness has been codified since the date of this trial as La.Code Evid. art. 611(C), effective January 1, 1989. See Comment (h) following Code Evid. art. 611.
[2] LSA-R.S. 15:466, which was in effect at the time of the instant trial, has been repealed by the new Code of Evidence, which took effect on January 1, 1989. See Act 515 of 1988.
[3] We note that in Powers v. Ohio, ___ U.S. ___, 111 S.Ct. 1364, 1370, 113 L.Ed.2d 411 (1991), a case involving a white defendant, the United States Supreme Court held that the Equal Protection Clause prohibits a prosecutor from using peremptory challenges to exclude otherwise qualified and unbiased persons from the petit jury solely by reasons of their race, "a practice that forecloses a significant opportunity to participate in civic life." The Supreme Court further held that, while an individual juror does not have the right to sit on a particular petit jury, the juror possesses the right not to be excluded from serving on one because race. The Supreme Court concluded that any defendant, regardless of his race, may raise the third-party equal protection claims of jurors excluded by the prosecution because of their race.

Under Batson v. Kentucky, which involved a black defendant, the United States Supreme Court set forth the procedure for the establishment of a prima facie case of purposeful discrimination. Under this procedure, a defendant first had to show that he was a member of a cognizable racial group and that the prosecutor had exercised peremptory challenges to remove from the venire members of the defendant's race. Clearly, this initial showing is obviated by the holding in Powers v. Ohio.