J2LOTTINGER, Chief Judge.
The defendant, Willie L. Johnese, III, was charged by grand jury indictment with second degree murder. La.R.S. 14:30.1. He pleaded not guilty and, after trial by jury, was found guilty as charged. The defendant filed a motion for post verdict judgment of acquittal; after a hearing, the trial court entered a modified judgment of conviction of the responsive offense of manslaughter. La. R.S. 14:31. The defendant received a sentence of ten years at hard labor. The court suspended the sentence and placed the defendant on active, supervised probation for five years with several special conditions of probation, including a term of two years in the parish jail, with credit for time served. The State filed a motion to reconsider sentence, which the trial court denied.[1] The State has appealed, alleging as its only assignment of error that the trial court erred in reducing this second degree murder conviction to manslaughter.
FACTS
At approximately 10:30 p.m. on September 5, 1994, the defendant shot the victim, Alex Keller, with a .25 pistol. The shooting took place in front of the defendant’s apartment on Crown Street in Baton Rouge, Louisiana. The shooting occurred at close range. The defendant fired a single shot from the pistol, which struck the victim in the left temple. The defendant then returned to his apartment and surrendered to the police without resisting. ' The victim died a short time later at a local hospital. A subsequent blood test revealed that the victim’s blood-alcohol level was .19 grams-percent.
At the trial, State witness Masakella Harvey, the victim’s girlfriend, testified that she had been to a barbecue on the day of the shooting. Eventually, she and the victim ended up at the Crown Street Apartments, where the victim’s sister, Consuella, resided in an upstairs apartment. A beer bottle was broken beside the stairs when Ms. Harvey tried to take it away from the victim. After about ten minutes, the victim was ready to leave, but Ms. Harvey wanted to stay and visit with Consuella. The victim got into his car and moved it to the middle of the parking lot. He called to Ms. Harvey from the parking lot and asked her to leave with him. She changed her mind Land decided to leave. Ms. Harvey went back inside Consuella’s apartment to get her purse as the victim came back upstairs. When they went down the stairs, the defendant was sweeping up glass near the foot of the stairs. According to Ms. Harvey, the argument between the defendant and the victim began when some glass hit the victim’s foot. The victim said: “Handle your business. You got (sic) any beef with me?” The two men began arguing back and forth. Ms. Harvey indicated that she tried three or four times to get the victim to leave with her, but he ignored her and kept arguing with the defendant. Just prior *1177 to the shooting, the victim was walking between two parked cars with his hands in the air saying, “[hjandle your business.” Ms. Harvey stated that she then got into the victim’s car and heard the shot. ' She got out of the car and went to the victim. She told the defendant that he did not have to shoot the victim, but the defendant appeared to be in shock and did not answer her. Instead, he just turned around and went into his apartment.
Another State witness, Wendell Brumfield, the defendant’s future brother-in-law, testified about the argument between the defendant and the victim which led to the instant shooting. Mr. Brumfield and the defendant were watching a football game on television when they heard the sound of glass breaking in the parking lot. The defendant got his wife’s gun, a .25 pistol, and placed it on top of the television along side another gun which was already on the television. They heard the defendant and Ms. Harvey arguing and shortly thereafter, heard the sound of- glass breaking close to the stairs. The defendant looked outside and saw the victim walking up the stairs. The defendant told Mr. Brum-field that there was a gun in the victim’s pocket. After a few minutes, the defendant went outside to sweep up the glass. According to Mr. Brumfield, the victim, who was upstairs, at the time stated: “you ain’t got (sic) to be slinging that glass like that.” The defendant replied: “well, I got (sic) kids that play out here and this glass is out here.” The victim began fussing and cursing at the defendant and started down the stairs. The two men began an argument which lasted about five or ten minutes. During the argument, the defendant stepped into the apartment and got his wife’s gun. Mr. Brumfield stated that the shooting occurred after the victim threatened the defendant and made a quick step toward him. After the shooting, the defendant was shocked. He returned to his apartment, sat down in a bedroom closet, and cried.
Mr. Brumfield admitted that the victim never touched the defendant and that his hands were to his side when the shooting occurred. He stated that the defendant did not curse at the Lvictim during the argument. He also admitted that, when speaking to the police after the shooting, he did not tell them that the defendant saw a gun in the victim’s pocket or that the victim threatened to blow the defendant’s brains out.
The defendant testified that he shot the victim in self-defense. He explained that he saw the outline of a gun in the victim’s pocket as the victim walked upstairs. According to the defendant, the argument between the two men began when he went outside to sweep up the broken glass and the victim began cursing and yelling at him from upstairs. As the victim came down the stairs, the defendant stated that he stepped inside his door, got his wife’s gun and placed it in his pocket. During the course of the argument, the defendant walked down the sidewalk, away from his apartment, as the victim turned away and walked between two ears in the parking lot. The defendant stated that he had the presence of mind to position himself against a brick wall to ensure that stray bullets did not enter his apartment. The defendant stated that at first he believed there might be a fight. However, he became scared when the victim turned around, threatened him, approached to a distance of three to four feet and then made “a jerking motion,” whereupon he shot the victim.
The defendant admitted that, in his taped statement to the police after the shooting, he did not mention seeing the gun in the victim’s pocket; however, he explained that he told the detectives about seeing the victim’s gun prior to the taped statement.
On rebuttal, both Dennis Moran and John Colter, the two Baton Rouge Police detectives who took the defendant’s statement after the shooting, testified that the defendant never stated that he had seen the victim in possession of a weapon.
ASSIGNMENT OF ERROR
In its only assignment of error, the State contends that the trial court erred in modifying the jury verdict of second degree murder and entering a judgment of conviction of the responsive offense of manslaughter:
*1178 The defendant also filed a motion for appeal herein, which the trial court granted. However, the record contains no defense assignments of error. In brief, when referring to the trial court’s ruling on the motion for post verdict judgment of acquittal, the defendant states: “[t]he defense of course contends that an acquittal should have been granted, but at the very most the Rrecord only supports a conviction of manslaughter.” Ordinarily, this Court will not consider arguments which are neither assigned as error nor related to errors patent on the face of the record. La.Code Crim.P. art. 920; State v. Williams, 319 So.2d 404, 405 (La.1975); State v. Spears, 525 So.2d 329, 330 n. 4 (La.App. 1st Cir.), writ denied, 532 So.2d 175 (La.1988). However, the supreme court has taken the position that, if the sufficiency of the evidence is questioned in a defendant’s appeal brief, the issue should be reviewed although it was not assigned as error. See State v. Riley, 623 So.2d 1289 (La.1993) (citing State v. Murphy, 542 So.2d 1373, 1375 n. 4 (La.1989); State v. Raymo, 419 So.2d 858, 861 (La.1982)). Therefore, we will also consider the defendant’s argument that the trial court erred in failing to grant the motion for post verdict judgment of acquittal.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. See La. Code Crim.P. art. 821; State v. King, 563 So.2d 449, 456 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990).
When self-defense is raised as an issue by the defendant, the State has the burden of proving, beyond a reasonable doubt, that the homicide was not perpetrated in self-defense. Thus, the first issue to be resolved is whether or not a rational fact finder, viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that the defendant did not kill the victim in self-defense. State v. Spears, 504 So.2d 974, 978 (La.App. 1st Cir.), writ denied, 507 So.2d 225 (La.1987).
La.R.S. 14:20 provides, in pertinent part:
A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.
However, La.R.S. 14:21 provides:
A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows Ror should know that he desires to withdraw and discontinue the conflict.
As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir.1984). Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Richardson, 459 So.2d at 38. On appeal, this Court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finders’ determination of guilt. State v. Creel, 540 So.2d 511, 514 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La.1989).
While there was conflicting testimony on the issue of whether or not the victim threatened to kill the defendant, the evidence established that the victim, although armed with an unloaded gun, did not remove this gun from his pants pocket. The guilty verdict returned in this case indicates that the jury correctly rejected the defense theory of justifiable homicide. Their conclusion is supported by the fact that when the gun was removed from the victim’s pants pocket at the hospital, the zipper on this pocket was closed.
The guilty verdict in this case demonstrates that the jury concluded this was a case of second degree murder and rejected the possibility of a manslaughter verdict. *1179 Manslaughter is a responsive offense to second degree murder. La.Code Crim.P. art. 814(A)(3). A trial judge may modify a verdict and render a judgment of conviction on a lesser included responsive offense only if it finds that the evidence, viewed in a light most favorable to the State, supports only a conviction of that responsive offense. La. Code Crim.P. art. 821(C).
La.R.S. 14:31(A)(1) provides:
A. Manslaughter is:
(1)A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed....
|7The existence of “sudden passion” and “heat of blood” are not elements of the offense; rather they are factors in the nature of mitigating circumstances which may reduce the grade of homicide. State v. Lombard, 486 So.2d 106, 110-11 (La.1986); State v. Smith, 490 So.2d 365, 370 (La.App. 1st Cir.), writ denied, 494 So.2d 324 (La.1986). Provocation is a question of fact to be determined by the trier of fact. Smith, 490 So.2d at 370. The jury is free to infer the mitigatory factors from the evidence. Lombard, 486 So.2d at 111, n. 9. In reviewing the trial judge’s modification of the instant jury verdict, we must determine whether or not a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigatory factors were not established by a preponderance of the evidence. Lombard, 486 So.2d at 111; Smith, 490 So.2d at 370.
The evidence in this case indicates that the defendant and the victim were arguing and/or cursing and threatening each other when the instant shooting occurred. While there was a certain amount of conflicting trial testimony among the three key witnesses to the shooting (Harvey, Brumfield, and the defendant), the following facts are not in dispute:
(1) the victim was intoxicated; his blood-alcohol level was .19 grams-percent;
(2) the victim was armed with a .25 pistol in his pocket, although it was unloaded;
(3) immediately prior to the confrontation the victim was arguing with Ms. Harvey;
(4) upon hearing breaking glass in the parking lot, the defendant retrieved his wife’s gun and placed it on top of the television near his front door alongside a gun which was already there;
(5) the argument between the defendant and the victim began when the defendant went outside to sweep up the broken glass in front of his apartment;
(6) during the argument, the defendant reached into his apartment, grabbed his wife’s gun and placed it in his pocket;
(7) during the argument, the defendant walked down the sidewalk some distance from his front door as the victim turned and entered the parking lot;
(8) prior to the shooting, the defendant positioned himself in front of a brick wall to protect his family from stray bullets;
(9) the defendant and the victim had been arguing for five to ten minutes when the shooting occurred;
| ¾(10) the defendant fired a single shot at close range, striking the victim in the left temple;
(11) the defendant appeared to be in shock after the shooting; and
(12) the defendant returned to his apartment after the shooting and offered no resistance to the police when arrested.
Considering these facts, a rational trier of fact could have concluded that the mitigatory factors necessary to reduce the homicide to manslaughter were not established by a preponderance of the evidence. Considering all surrounding circumstances, the jury could have concluded that, despite evidence of provocation from the victim’s drunken aggressive behavior, the defendant acted with deliberation and reflection and not from heat of passion at the time of the shooting.
*1180 We are convinced that a rational trier of fact, viewing the evidence in the light most favorable to the State, could have found that the mitigatory factors, which reduce a homicide from second degree murder to manslaughter, were not established by a preponderance of the evidence. Accordingly, the trial judge erred in modifying the verdict and rendering a judgment of the lesser offense of manslaughter.
DECREE
For the foregoing reasons, the post-verdict relief granted by the trial judge is reversed and the sentence is vacated. This matter is remanded to the trial court for reinstatement of the jury’s verdict of guilty of second degree murder and for resentencing in accordance with law.
REVERSED AND REMANDED.
FITZSIMMONS, J., dissents.

. The trial court's denial of the State's motion to reconsider sentence is the subject of a separate, pending appeal. See State v. Johnese, 96 KA 0227. Accordingly, we do not address the sentence herein.