476 So.2d 961 (1985)
STATE of Louisiana
v.
Leroy RAYFORD, Jr.
No. 84-KA-1361.
Court of Appeal of Louisiana, First Circuit.
October 8, 1985.
*962 William J. Burris, Asst. Dist. Atty., Franklinton, for the State.
H.R. Alexander and Sam J. Collett, Bogalusa, for defendant.
Before EDWARDS, LANIER and JOHN S. COVINGTON, JJ.
EDWARDS, Judge.
Leroy Rayford, Jr., was convicted of second degree murder in connection with the death of his wife, Mary Rayford, and sentenced to life in prison without benefit of probation, parole, or suspension of sentence. Defendant appeals, alleging insufficiency of the evidence, and also asks this court to review the record for patent errors. We affirm.
*963 The Washington Parish Sheriff's Department was called to the Rayford home at about 2:30 p.m. on January 7, 1984. Three deputies who went to the scene of the crime testified at trial that after defendant was read his rights, he told them he had beaten his wife with a broomhandle and knocked her over the woodburning heater several times, but that he had not meant to kill her. He further stated that at one point she had run out of the house, but he caught her and brought her back inside.
Dr. Paul Gard, Jr., who conducted the autopsy, described the condition of the victim's body:
She had blood coming from the left ear. She had hemorrhages in her eyes. She had many, many abrasions and contusions or bruises of the nose, forehead, upper and lower lips, and the right breast. She had some areas of first and second-degree burns of the lower abdomen and the thighs, the buttocks, and she had some abrasions of her back, of the back of her chest and buttocks.
Dr. Gard concluded that Mrs. Rayford died from a massive brain hemorrhage caused by a blow from a blunt instrument. He stated that such a blow could have been delivered by a piece of firewood, such as that found in defendant's home.
According to the testimony of James McGowan, on the evening of January 6, he and Mr. and Mrs. Rayford had been out drinking together, as they often did on weekends, and they eventually went to the Rayford home. Mr. and Mrs. Rayford went to bed, and he "passed out" on the couch in a room containing a wood stove. McGowan said that upon being awakened by a noise, he saw Mrs. Rayford sitting on the floor nude, and defendant standing in the room holding a piece of firewood about two feet long. According to McGowan, defendant said he was going to show her what fire felt like, whereupon he set fire to some pieces of paper and began burning her. It was at this point that McGowan said he returned to his own home.
The Rayfords' two children were at home during the incident. The older child, who was twelve years old, testified that he was awakened early in the morning by the noise of someone running through the house. He said he heard his mother screaming, and that noises which sounded like she was being beaten continued "a long time," coming at various times from the hall, the dining room, and the living room. He also testified that he heard his mother say, "Please quit, Leroy."
Defendant tried to establish that McGowan and Mrs. Rayford were having an affair. He called two witnesses who testified that they had seen the two together in public, but they did not give any facts tending to establish a romantic link. On cross-examination, the Rayfords' twelve-year-old son acknowledged that McGowan often visited his mother when his father was not at home. He also said that McGowan and his mother would sometimes sit and drink in the house, and other times, go off together, leaving him and his sister home alone.
McGowan said he only drank with Mrs. Rayford at her home when Mr. Rayford was present. Though he admitted that he and Mrs. Rayford had occasionally left the children home alone, he said it was only for the purpose of meeting Mr. Rayford for drinks. McGowan denied defense counsel's allegation that he and defendant had a "knock down drag out" because defendant found Mrs. Rayford nude with McGowan, but he did concede that defendant set a trash bag on fire and threw it on him and Mrs. Rayford.
Defendant contends that the State failed to prove he had the requisite specific intent to kill or to inflict great bodily harm as required for second degree murder. Although the defendant did not raise the sufficiency of evidence issue by motion for post verdict judgment of acquittal, see LSA-C.Cr.P. art. 821, we consider it now simply as a formal assignment of error. See State v. Stokes, 451 So.2d 1355, 1356 (La.App. 1st Cir.1984). The standard of review requires that we view the evidence in the light most favorable to the prosecution, and then determine whether any rational trier of fact could have found the *964 essential elements of the crime beyond a reasonable doubt. LSA-C.Cr.P. art. 821; Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Mathews, 375 So.2d 1165, 1168 (La.1979).
"Second degree murder is the killing of a human being: (1) When the offender has a specific intent to kill or inflict great bodily harm; ..." LSA-R.S. 14:30.1. "Specific criminal intent is that state of mind which exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10. Intent may be inferred from the circumstances; it need not be proved as a fact. LSA-R.S. 15:445; State v. Mullins, 464 So.2d 459, 462 (La.App. 1st Cir.1985).
Specific intent is an ultimate legal conclusion to be resolved by the finder of fact. State v. Graham, 420 So.2d 1126, 1128 (La.1982). To return a verdict of guilty of second degree murder, the jury necessarily concluded that specific intent to kill or to cause great bodily harm was present. In viewing the evidence in the light most favorable to the prosecution, we are convinced that a rational trier of fact could have found beyond a reasonable doubt that defendant had the specific intent to inflict great bodily harm on the victim.
Defendant contends, however, that "this is a classic case of manslaughter" because (1) he did not have specific intent to kill or inflict great bodily harm and (2) the offense was committed in "sudden passion or heat of blood" caused by his discovery of his wife nude with Mr. McGowan.
There are two basic types of manslaughter: (1) homicide committed in the heat of passion and (2) homicide committed during the perpetration or attempted perpetration of certain felonies and misdemeanors, or resisting lawful arrest. See LSA-R.S. 14:31. It is only the second type of manslaughter which does not require intent to kill or inflict great bodily harm. The heat of passion manslaughter "would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder)" except for the "sudden passion or heat of blood." Id. Therefore this type of manslaughter has all the elements of first or second degree murder, including specific intent to kill or inflict great bodily harm, but in addition has the mitigating circumstance of sudden passion. State v. Tompkins, 403 So.2d 644, 648 (La.1981).
Having found the elements of second degree murder, the jury then had to determine whether the circumstances indicated that the crime was actually manslaughter. Provocation may reduce a homicide to manslaughter if "the offense is committed in sudden passion ... immediately caused by provocation sufficient to deprive an average person of his control and cool reflection." LSA-R.S. 14:31(1). Nevertheless, "[p]rovocation shall not reduce a homicide to manslaughter if the jury finds the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed." Id. See also State v. Tompkins, 403 So.2d at 648. Because the question of provocation is one of fact, the jury must determine whether the offender's blood had actually cooled, or whether the average person's blood would have cooled.
Defendant mercilessly beat and burned his wife on the evening of her death. From the extent of the victim's injuries; the son's testimony that the beating took place over a long period of time and in several rooms of the house; and defendant's own admission that he beat her with a broomhandle, knocked her over the wood heater several times, and prevented her from escaping, the jury reasonably could have inferred that despite provocation, defendant's blood had actually cooled or that an average person's blood would have cooled over that period of time. See State v. Howard, 325 So.2d 812, 817-18 (La.1976).
Having found defendant's assignment of error without merit, and finding no errors *965 patent in the record, we affirm defendant's conviction and sentence.
AFFIRMED.