652 So.2d 15 (1995)
STATE of Louisiana
v.
Jeffrey C. HAM.
No. 93-KA-1036.
Court of Appeal of Louisiana, Fifth Circuit.
February 15, 1995.
*16 John M. Mamoulides, Dist. Atty., Fredericka Wicker, James Maxwell, Asst. Dist. Atty., Gretna, for plaintiff-appellee.
Bruce G. Whittaker, Staff Appellate Counsel, Indigent Defender Bd., Gretna, for defendant-appellant.
Before GAUDIN, GRISBAUM and DUFRESNE, JJ.
GAUDIN, Judge.
Jeffrey C. Ham was convicted by a jury in the 24th Judicial District Court of the October, 1992 second degree murder of his girlfriend, Kristina Santana, in Westwego, Louisiana. Ham did not deny that he shot Santana in the head but he said the shooting was accidental.
By a 10-2 margin, the jury rejected Ham's defense. We affirm this conviction and sentence, which was life imprisonment without benefit of parole, probation or suspension.
On appeal, Ham argues that the trial judge erred (1) in permitting the state to illegally introduce evidence of other crimes and (2) in denying his motion to suppress his statements.
At the time of the homicide, Ham and Kristina were living together with their 11-month-old son. At 11:30 p.m. on October 11, 1992, the Jefferson Parish Sheriff's Office received a 911 emergency call from Ham, who frantically stated: "I need help ... I killed my wife ... please, I killed her .. oh, my God ... it's bad ..."
When police officers arrived at the Ham-Kristina household they found Ham, covered with blood, on the front steps. He immediately said: "I just shot my wife. I can't believe I just fucking killed her." Inside, the deputies found Kristina, obviously dead of a head wound. A Mauser rifle was nearby on the floor.
After Ham was placed in a police automobile, one of the officers advised him of his Miranda rights and then asked Ham if he understood those rights. According to the policeman, Ham acknowledged that he did understand what had been read and then he (Ham) suddenly stated: "I killed her. She was so hard on me. I couldn't take her shit."
While being driven to the police station, Ham volunteered another explanation for the shooting. He said that he and Kristina had been watching a presidential debate on television and had gotten into an argument. Kristina, according to Ham, chose the wrong side so he "blew her brains out." Later, Ham offered other and varied versions of Kristina's shooting.
At trial, Ham testified that Kristina had the rifle in her possession and that he tried to take it away from her. Ham said that he instinctively grabbed the rifle's grip, placing one of his fingers inside the trigger guard and on the trigger itself. Kristina, according to Ham, grasped the front end of the rifle causing him to step backward. The weapon, Ham said, then accidently discharged. The bullet struck Kristina on the right side of her face.

ASSIGNMENT NO. 1
Prior to trial, the state filed two notices informing Ham that it intended to introduce evidence of other crimes, wrongs or acts committed by Ham to show specific intent to kill and to prove that the shooting was intentional and not accidental. Ham argues, in this assignment of error, that (1) the notices were defective, (2) the other crimes evidence did not prove any material issue but instead only showed Ham's allegedly bad character and (3) the prejudicial effect of the other crimes evidence far outweighed its probative value. Also, Ham contends that the notices *17 were defective because some of the witnesses named in the notices neither testified for appeared at trial. The state calls these contentions frivolous.
The first notice states:
"In accordance with the Louisiana Code of Criminal Procedure, Article 720, State v. Prieur, 277 So.2d 126 (1973), and State v. Abercrombie, 375 So.2d 170 [1170] (1979), you are hereby notified that the State of Louisiana intends to use evidence of other crimes committed by the defendant at the defendant's trial. The date(s), place(s) and circumstances of the prior crime(s) are: 04-01-92 BATTERY BY JEFFERY HAM UPON KRISTEN SANTANA. STATEMENTS BY THE FOLLOWING INDIVIDUALS THAT WHEN JEFFREY HAM GOT DRUNK ON VARIOUS OCCASIONS HE PHYSICALLY ABUSED KRISTEN SANTANA, MICHAEL CHAMPAGNE, LESLIE CHAMPAGNE, JANET MARMILLION AND KENNETH LAMBERT ...
"The purpose of using said crimes is to show defendant's knowledge, intent, guilty knowledge, system and motive."
The second notice states:
"In accordance with the Louisiana Code of Criminal Procedure, Article 720, State v. Prieur, 277 So.2d 126 (1973), and State v. Abercrombie, 375 So.2d 170 [1170] (1979), you are hereby notified that the State of Louisiana intends to use evidence of other crimes committed by the defendant at the defendant's trial.
"The State will present evidence of the violent nature of the victim and defendant's relationship as permitted by State v. Glenn Welch La.Sct. # 93-K-1886 [615 So.2d 300] decision February 22, 1993 through the testimony of Robert Santana, Sarah Santana and Patrick Eldes and on cross examination of defense witnesses.
"The State will present evidence of the defendant's violent temperament when drunk through the testimony of JPSO deputy R.E. Broussard.
"As the defense has informed the State that it intends to present as a defense the theory that Jeffery Ham accidentally shot Kristina Santana, the evidence in question is admissible to prove the defendant's specific intent to kill or inflict great bodily ham upon Kristina Santana as well as absence of mistake or accident pursuant to La.R.E. 464B.
"The purpose of using said crimes is to show defendant's knowledge, intent, guilty knowledge, system and motive."
At a hearing on April 5 and 6, 1993, the prosecution called the victim's mother, Sarah Santana, and stepfather, Robert Santana, and deputy Richard Broussard. They testified about crimes, wrongs and acts committed by Ham during the six- or seven-year relationship with Kristina. Following the hearing, the trial judge ruled that the state's other acts evidence was admissible under LSA-C.E. art. 404(B)(1), which provides:
"Evidence as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is subject to the present proceeding."
The application of this article is subject to the requirements imposed by State v. Prieur, 277 So.2d 126 (La.1973), as explained by LSA-C.E. art. 1103:
"Article 404(B) and 104(A) neither codifies nor affects the law of other crimes evidence, as set forth in State v. Prieur, 277 So.2d 126 (La.1973), State v. Davis, 449 So.2d 466 (La.1984) and State v. Moore, 278 So.2d 781 (La.1973) and their progeny, as regards the notice requirement and the clear and convincing evidence standard in regard to other crimes evidence. Those cases are law and apply to Article 404(B) and 104(A), unless modified by subsequent state jurisprudential development."
In State v. Jackson, 625 So.2d 146 (La. 1993), the Supreme Court of Louisiana provided a comprehensive discussion on the admissibility *18 of other acts or crimes evidence under the Louisiana Code of Evidence:
"Generally, evidence of other acts of misconduct is not admissible; however, there are statutory and jurisprudential exceptions to this rule. One exception is when the evidence of other acts tends to prove a material issue and has independent relevance other than showing that the defendant is a man of bad character. Even if independently relevant, the probative value of such evidence must be weighed against its prejudicial effect. LSA-C.E. art. 403 [footnote omitted]; State v. Germain, 433 So.2d 110 (La.1983); State v. Thompson, 532 So.2d 1160 (La.1988); and State v. Silguero, 608 So.2d 627 (La.1992). Evidence of other acts is allowed to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding." LSA-C.E. art. 404(B)(1). [footnote omitted] One of these factors must be at issue, have some independent relevance, or be an element of the crime charged in order for the evidence to be admissible.
"The state is required to prove that the defendant committed these other acts by clear and convincing evidence. State v. Davis, 449 So.2d 466 (La.1984); LSA-C.E. art. 1103. [footnote omitted] The state must, within a reasonable time before trial, provide written notice of its intent to use other acts or crimes evidence and describe these acts in sufficient detail. Likewise, the state must show that the evidence is neither repetitive nor cumulative, and is not being introduced to show that the defendant is of bad character. The court must, at the request of the defendant, offer a limiting instruction to the jury at the time the evidence is introduced. The court also must charge the jury at the close of the trial as to the limited purpose for the other crimes evidence and that the defendant cannot be convicted for any crime other than the one charged or any responsive offenses to it. State v. Prieur, supra.
"The fact that the other acts or crimes happened some time before the offense for which the defendant is on trial is not sufficient, in and of itself, to require the exclusion of the evidence. Remoteness in time, in most cases, is only one factor to be considered when determining whether the probative value of the evidence outweighs its prejudicial effect. Generally, a lapse in time will go to the weight of the evidence, rather than to its admissibility. State v. Cupit, [189 La. 509] 179 So. 837 (La.1938); State v. Bolden, [257 La. 60] 241 So.2d 490 (La.1970); State v. Howard, 520 So.2d 1150 (La.App. 3rd Cir.1987), writ denied, 526 So.2d 790 (La.1988); State v. Driggers, 554 So.2d 720 (La.App. 2d Cir.1989).
"In summation, for the evidence to be admissible, the state must comply with the notice requirements and limiting instructions set out in Prieur, prove with clear and convincing evidence that the other acts or crimes occurred and were committed by defendant, demonstrate that the other acts satisfy one of the requirements listed in LSA-C.E. art. 404(B)(1), and, finally, show that the probative value of the evidence outweighs its prejudicial effect."
Ham's intent was a material issue in this case and was genuinely contested at trial. His defense of accidental or intentional discharge of the murder weapon focused the trial on the issue of his specific intent to "kill or to inflict great bodily harm" on the victim; thus, the requirement of a genuinely contested issue of intent at trial as a prerequisite for the use of other acts evidence was met in this case.
Although Ham argues otherwise, the probative value of the other acts evidence offered by the state outweighed its prejudicial value. Ham claims that the evidence regarding his prior acts of personal violence proved only that he was an alcoholic and an abusive housemate; however, as against his claim at trial that the murder weapon accidentally or unintentionally discharged, evidence of his prior acts of violence toward the victim provided proof of his specific intent at the time of the offense to kill the victim or to inflict great bodily harm on her. Considering the critical importance of that intent in *19 this case, the probative value of the state's other acts evidence clearly outweighed any prejudicial effect that evidence may have had on the jury.
It seems quite clear that Ham was given a detailed declaration of exactly what other crimes, acts and/or wrongs the state planned to use. Further, the trial judge was informed of the nature of the evidence so that he could rule intelligently on admissibility before it was presented to jurors. This assignment of error, although not frivolous, is nonetheless without substance.

ASSIGNMENT NO. 2
Ham, in this assignment of error, says that the trial judge erred in denying his motion to suppress his statements.
The first officer on the scene said nothing to Ham, who was sitting on the front porch. Ham said, "I just shot my wife. I can't believe I fucking killed her." Later, Ham made other unsolicited statements after being advised several times of his Miranda rights. These statements, according to the officers, were voluntary and spontaneous. The record supports the state's contention that the police scrupulously honored Ham's rights under Miranda.
Ham believes that the repeated recitation of Miranda rights by police officers rendered the rights meaningless and constituted the functional equivalent of police interrogation. Many of Ham's allegedly spontaneous utterances, it is argued, followed a new advisal of rights. The trial judge was not impressed by this argument.
Carefully considering the testimony of the officers, we cannot say that the trial judge erred in denying Ham's motion to suppress coerced statements. The testimony of police officers alone, if creditable, an support a finding that a defendant's Miranda rights were fully protected.
An error patent review conducted in accordance with LSA-C.Cr.P. art. 920 and State v. Williams, 593 So.2d 753 (La.App. 5 Cir.1992), discloses an error in defendant's sentence.
Although the commitment in the record gives Ham credit for time served prior to imposition of sentence, the sentencing transcript, which prevails, fails to reflect that he was allowed credit for time served. The sentence imposed on Ham is amended to allow credit for time served before imposition of sentence; otherwise, the conviction and sentence are affirmed.
AFFIRMED AS AMENDED.