652 So.2d 21 (1995)
STATE of Louisiana
v.
Leonard B. PERKINS
No. 94-KA-366.
Court of Appeal of Louisiana, Fifth Circuit.
February 15, 1995.
*22 Bruce G. Whittaker, Staff Appellate Counsel, 24th Judicial Dist., Indigent Defender Bd., Gretna, for appellant Leonard B. Perkins.
John M. Mamoulides, Dist. Atty., James Williams and Dorothy A. Pendergast, Asst. Dist. Attys., Research & Appeals, 24th Judicial District, Parish of Jefferson, Gretna, for appellee State of La.
Before KLIEBERT, GAUDIN and CANNELLA, JJ.
CANNELLA, Judge.
Defendant, Leonard B. Perkins, appeals from his conviction of first degree murder and his sentence to life imprisonment without benefit of parole, probation or suspension of sentence. For the reasons which follow, we affirm the conviction and sentence, amending the later to afford credit for time served, and remand the case to the district court for notification to defendant of the prescriptive period for post conviction relief. La.C.Cr.P. art. 930.8 C.
On March 1, 1994, Jefferson Parish Sheriff's Office personnel responded to a call about a body at an abandoned house in the 7000 block of Britt Street in Jefferson Parish. There, deputies discovered the body of a deceased black female, later identified as Penny Rodrigue. The victim was lying faceup and her shirt was pulled up around her neck. She was nude from the waist down. A subsequent autopsy revealed that the victim had been strangled and revealed the presence of sperm in the victim's vagina. While at the scene, deputies talked to Lisa Johnson, who lived next to the abandoned house. She denied seeing or hearing any event related to the decedent. Subsequently, deputies picked up her husband, Lynndon Johnson, for questioning related to this homicide. At that time the Johnsons gave statements about the victim's activities which they observed on the evening of February 28, 1991. At approximately 11:00 p.m., Mrs. *23 Johnson saw the victim in front of her home. Defendant approached the victim, grabbed her and dragged her to the rear of the abandoned house next door. Mrs. Johnson went to the side of her home and looked out of a window. She saw defendant and the victim fighting. Defendant removed the victim's clothing and got on top of her. From this time on, the victim did not move.
Lynndon Johnson returned home and his wife told him to look out of the window. Mr. Johnson also saw defendant having sex with the victim. Defendant left and returned a while later and again had sex with the victim. Mr. Johnson wanted to call the police, but Mrs. Johnson persuaded him not to do so. She was concerned that the police would accuse him of the offense because the police were always "harassing him." However, the next morning when the victim's body was still behind the abandoned house, Mrs. Johnson called the police.
As a result of the Johnsons' statements, defendant was arrested. He gave a taped statement admitting that he raped and choked the victim. Defendant was charged with first degree murder, in violation of La. R.S. 14:30. He pled not guilty and not guilty by reason of insanity. He filed numerous pre-trial motions and several hearings were held, including a sanity commission hearing. Following this hearing, the trial court ruled that defendant was competent for trial. Trial was held on September 27, 1993 through October 1, 1993 and the jury returned the verdict of guilty as charged. The trial court conducted the penalty phase of the trial and deliberations, but the jury was not able to return a recommendation as to the sentence. Thereafter, on October 15, 1993, in accordance with La.C.Cr.P. art. 905.8, the trial court sentenced defendant to life imprisonment at hard labor, without parole, probation or suspension of sentence. Defendant now appeals, urging three assignments of error, including a request for an error patent review.
First, defendant argues that the trial court erred in rejecting certain special jury instructions that he had proposed. More particularly, defendant contends that error was committed when the submitted special jury instructions regarding manslaughter were not read to the jury. He argues that this omission (1) violated La. C.Cr.P. art. 807 and created the "impression that `heat of blood' manslaughter was not to be seriously considered", (2) "may have served to preclude the jury from fully considering manslaughter" and (3) constituted reversible error.[1]
The pertinent jury instructions regarding manslaughter given by the trial judge are as follows:
Manslaughter is the killing of a human being when the defendant has a specific intent to kill or inflict great bodily harm but the killing is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection, or

A killing committed without any intent to cause death or great bodily harm when the defendant is engaged in the perpetration or attempted perpetration of simple rape.
Simple rape is a rape committed when the anal or vaginal sexual intercourse is deemed to be without the lawful consent of a victim because it is committed under any one or more of the following circumstances:
1) when the victim is incapable of resisting or of understanding the nature of the act by reason of stupor or abnormal condition of the mind produced by an intoxicating narcotic or anesthetic agent, administered by or with the defendant; or when the victim has such incapacity, by reason of stupor or abnormal condition of mind from any cause, and the offender know or should have known of the victim's incapacity, or

*24 2) when the victim is incapable, through unsoundness of mind, whether temporary or permanent, of understanding the nature of the act and the offender knew or should have known of the victim's incapacity.
Thus, in order to convict the defendant of manslaughter, you must find:
1) that the defendant killed Penny Rodrigue; and
2) that the defendant had a specific intent to kill or inflict great bodily harm; and
3) that the killing was committed in sudden passion or heat of flood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection.
or:
1) that the defendant killed Penny Rodrigue; and
2) that the defendant had no intent to kill or inflict great bodily harm and was engaged in the perpetration or attempted perpetration of simple rape.
The trial court did not include three of defendant's proposed jury instructions regarding manslaughter. They are as follows:
Proposed Instruction 1:
"There are two basic types of manslaughter: (1) homicide committed in the heat of passion and (2) homicide committed during the perpetration of certain felonies and misdemeanors, or resisting lawful arrest. (See La.R.S. 14:30.1) It is only the second type of manslaughter which does not require intent to kill or inflict great bodily harm. The heat of passion manslaughter `would be murder under Article 30 (first degree murder) or Article 30.1 (second degree murder)' except for the `sudden passion or heat of blood.' Therefore this type of manslaughter has all the elements of first or second degree murder, including specific intent to kill or inflict great bodily harm, but in addition has the mitigating circumstance of sudden passion." (State v. Tompkins, 403 So.2d 644, 648 (La.1981); State v. Rayford, 476 So.2d 961, 964 (La. App. 1 Cir.1985)).
"The existence of "sudden passion" and "heat of blood" are not elements of the offense, but rather are factors in the nature of mitigating circumstances which may reduce the grade of homicide." (State v. Tompkins, 403 So.2d 644, 648 (La.1981); State v. Smith, 490 So.2d 369, [sic] at 370 (La.App. 1 Cir.1986), writ denied, 494 So.2d 324 (La.1986)).
Proposed Instruction 2:
If you believe that the elements of first or second degree murder are present, then you must "determine whether the circumstances indicated that the crime was actually manslaughter. Provocation may reduce a homicide to manslaughter if `the offense is committed in sudden passion ... immediately caused by provocation sufficient to deprive an average person of his control and cool reflection.' LA. R.S.-R.S. 14:31(1). Nevertheless, `provocation shall not reduce a homicide to manslaughter if the jury finds the offender's blood had actually cooled, or that an average person's blood would have cooled at the time the offense was committed.' Id. ... State v. Tompkins, 403 So.2d at 648. Because the question of provocation is one of fact, the jury must determine whether the offender's blood had cooled, or whether the average person's blood would have cooled." (State v. Tompkins, 403 So.2d 644, 648 (La.1981); State v. Rayford, 476 So.2d 961, 964 (La.App. 1 Cir.1985)).
Proposed Instruction 3:
"Heat of passion" is defined in criminal law as "passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time." Black's Law Dictionary 4th Ed. at 853.
Defendant argues that the jury instructions given by the court provided a detailed definition of manslaughter involving a simple rape but failed to contain a detailed definition of manslaughter where the killing was committed in the "heat of blood" or "sudden passion."
La.C.Cr.P. art. 807 addresses the presentation of special charges by the court and provides:
The state and the defendant shall have the right before argument to submit to the *25 court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court.
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
Defendant's first and second requested special jury charges closely and contextually parallel the charge on manslaughter given by the trial court. The law clearly provides that a requested special charge which is included in the general charge need not be given. La.C.Cr.P. art. 807; State v. Necaise, 466 So.2d 660, 667 (La.App. 5th Cir.1985). Additionally, we note that the charge given (and the requested special instruction) did not include that portion of the manslaughter statute that explains that "provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed ..." However, the omission of this portion of the statute actually benefitted, not prejudiced, defendant and, therefore, is not an appealable issue.
As to the third requested jury instruction, it was within the trial court's discretion to refuse to give the requested definition of "heat of passion", because it would have required a qualification, limitation or explanation. La.C.Cr.P. art. 807.
Therefore, this assignment of error has no merit.
Next, defendant argues that the trial court erred in denying defendant's motion for a mistrial, made during the prosecutor's rebuttal argument. He argues that the prosecutor's specific statement during rebuttal, "Allow me the opportunity to come back and tell you why this should be a death penalty case," referred to other evidence of defendant's guilt or bad character, was prejudicial and warrants a reversal of his conviction.
The state contends that the statement was "merely a reference to statements made to the jury during voir dire regarding the possibility of a penalty phase in a first degree murder trial."
During the trial, the court sustained defendant's objection and admonished the jury to disregard the prosecutor's remark. Defense counsel continued to argue that the remark was "misconduct" and requested a mistrial. The trial court denied this motion for a mistrial.
La.C.Cr.P. art. 774 provides that the scope of closing argument is to be limited to the evidence admitted, the lack of evidence, conclusions of fact therefrom and the law applicable to the case. The argument shall not appeal to prejudice. Further, the rebuttal argument shall be confined to answering the argument of defendant. La.C.Cr.P. art. 774; State v. Paige, 556 So.2d 151, 153 (La.App. 5th Cir.1990). If oral argument goes beyond these limits, it may fall within the ambit of La.C.Cr.P. arts. 770 and 771, requiring mistrial or admonishment, respectively. La. C.Cr.P. art. 770, pertaining to when granting a mistrial is appropriate, provides:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
(4) The refusal of the judge to direct a verdict.
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition *26 be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
La.C.Cr.P. art. 771 provides that on the request of defendant, the trial court shall admonish the jury to disregard the district attorney's remark that is "irrelevant or immaterial and of such a nature that it might create prejudice against the defendant ... in the mind of the jury." State v. Dilosa, 529 So.2d 14, 19-20 (La.App. 5th Cir.1988), writ denied, 538 So.2d 1010 (La.1989). The trial court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure defendant a fair trial. La.C.Cr.P. art. 771. However, before a verdict is overturned on the basis of improper arguments, the trial court must be thoroughly convinced that the remark influenced the jury and contributed to the verdict. State v. Spencer, 93-571 (La. App. 5th Cir. 1/25/94), 631 So.2d 1363, 1369.
Clearly, the remark in this case is not within the scope of La.C.Cr.P. art. 770 since it did not make direct reference to any enumerated prohibition of the matters covered therein. Therefore, a mistrial is not mandated by that article. In response to the defense objection to the prosecutor's comment, the trial court stated that the remark was "premature" and admonished the jury to disregard the remark. Furthermore, during the jury charges, the trial judge specifically instructed the jury not to consider as evidence any statements or arguments made by counsel, including those made during closing arguments. We see nothing in the record which indicates that the comment complained of influenced the jury or contributed to the verdict. Thus, the remark did not mandate a mistrial. Therefore, we find that this assignment of error has no merit.
Defendant also assigned as error any and all errors patent on the face of the record. Defendant requests that this court conduct an error patent review of the record. This court routinely reviews every criminal record for errors patent on the face of the record. La.C.Cr.P. art. 920 provides: "the following matters and no others shall be considered on appeal: (1) An error designated in the assignments of error; and (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."
For the purpose of an error patent review the "record" in a criminal case includes the caption, the time and place of holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the bill of particulars filed in connection with a short form indictment or information, the mentioning of the impaneling of the jury, the minute entry reflecting sequestration in a capital case, the verdict, and the judgment or sentence. See State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990).
A review of the record reveals two errors patent. First, we find that the trial court failed to give the defendant credit for time spent in actual custody prior to the imposition of sentence as mandated by La.C.Cr.P. art. 880. Therefore, we order that the sentence, the minute entry and the commitment, be amended to give defendant credit for time served in actual custody prior to the imposition of sentence.
Additionally, the record reflects that the trial court failed to advised defendant of the three year prescriptive period for post conviction relief, as required in La.C.Cr.P. art. 930.8 C.[2] However, failure to so inform defendant does not constitute grounds for reversing the sentence or remanding the case for resentencing. La.C.Cr.P. art. 921. Rather, we remand the case to the district court with instructions for the trial court to inform defendant of the provisions of La. C.Cr.P. art. 930.8 by sending appropriate written notice to defendant within 10 days of the rendition of this opinion and to file written proof that defendant received the notice in the record of the proceedings. See State v. Procell, 626 So.2d 954 (La.App. 3rd Cir. 1993); State v. McSweeney, 619 So.2d 861 *27 (La.App. 3rd Cir.1993); State v. Sumlin, 605 So.2d 608 (La.App. 2nd Cir.1992).
Accordingly, for the reasons stated above, defendant's conviction for first degree murder and sentence to life imprisonment without benefit of parole, probation or suspension of sentence is affirmed, as amended, giving credit for time served, and the case is remanded to district court for further proceedings as provided herein.
CONVICTION AFFIRMED; SENTENCE AFFIRMED, AS AMENDED; CASE REMANDED.
NOTES
[1] An argument is presented by the state concerning the adequacy of the defense objection to the jury charges. However, since we ultimately hold that defendant's arguments concerning the charges lacks merit, we will not address the argument concerning the adequacy of the defense objection to the charges.
[2] Article 930.8 C provides:

C. At the time of sentencing, the trial court shall inform the defendant of the prescriptive period for post conviction relief.