703 So.2d 50 (1997)
STATE of Louisiana
v.
Angelon PARDON.
No. 97-KA-248.
Court of Appeal of Louisiana, Fifth Circuit.
October 15, 1997.
*54 Laurie A. White, New Orleans, for Appellant.
Paul D. Connick, Jr., District Attorney, Alison Wallis, Assistant District Attorney, Research and Appeals, Gretna, for Appellee.
Before BOWES, WICKER and DALEY, JJ.
WICKER, Judge.
Angelon Pardon was indicted on October 15, 1995 for the second degree murder of John David Conner, a violation of La. R.S. 14:30.1. At arraignment the defendant pleaded not guilty. The case was tried from May 21 through 23, 1995 before a twelve-member jury, which returned a unanimous verdict finding the defendant guilty as charged. The defendant's motions for new trial and for post-verdict judgment of acquittal were denied. On August 5, 1996 the trial court sentenced the defendant to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. The defendant appeals. We affirm.

FACTS
The following evidence was presented at trial:
Pathologist Dr. Susan Garcia testified that John David Conner sustained a single stab wound to his chest that perforated his lung and punctured the pulmonary artery. The wound, which was four-and-one-half to five inches deep, resulted in bleeding into the left chest cavity and into the pericardium, the sac surrounding the heart. Dr. Garcia stated the decedent would have lost consciousness within three to four minutes and probably died within the next five to ten minutes. She also testified that toxicology testing of the victim's body fluids revealed an alcohol level of.38, a markedly elevated level within the lethal range, but that Conner died of the knife wound.
William H. Ingram testified he is a bartender at Pat's Bar in Gretna near the trailer park where Conner lived. He knew David Conner and Angel Pardon.[1] In the early morning hours of September 1, 1995, Pardon and Conner came into the bar, where another patron purchased a pitcher of beer for them. Conner drank a glass of beer, put his head on the bar, and went to sleep. Pardon drank about half the pitcher, then she and Conner left with the remaining beer in four small "go-cups."
Officer Herbert J. Este of the Gretna Police Department testified that about 3:00 a.m. on September 1, 1995 he was dispatched to 712 19th Street, Lot 14, a trailer park in Gretna. He was the first unit to arrive on the scene. As he entered the trailer he observed a woman sitting on a sofa on one side of the room and another woman, the defendant, sitting on another sofa. The defendant had a man lying across her with his head in her lap. As far as Este could see the man was unconscious. He found no vital signs. Este asked the defendant what had happened. She told him she had left her bedroom and found Conner lying on the sofa, and that she had no knowledge of how he was on the sofa or how he was in that condition. The other woman also denied any knowledge of what had happened. Este stated there was a bandage on the body (visible in State Exhibit 3, a photograph, on the left upper quadrant of the victim's chest). Este left the scene after emergency medical services personnel arrived.
Detective William Cambre of the Gretna Police Department testified he investigated the scene with a crime scene technician. They discovered a brown-handled knife, with *55 what appeared to be dried blood on the blade, beneath a plastic bag in a kitchen cabinet under the sink. They found another knife, black-handled, which did not appear to have blood on it. Based on the apparent bloodstains, Cambre believed the brown-handled knife was the weapon used on the victim. After interviewing other residents of the trailer park Cambre arrested the defendant for second degree murder. Cambre stated on cross-examination that Pardon had attempted to doctor the victim's wound with peroxide and the bandage.
Gretna Police Officer Randy Berggren testified he photographed and processed the scene for evidence. He found the brown-handled knife when he opened the cabinet door and noticed the handle sticking out from the plastic bag partially covering it. He also recovered the black-handled knife under the pillow on the sofa the victim was lying on.
Frances Plaisance, who also lived in the trailer park, testified that Pardon and Conner were staying with Virginia Keener in Keener's trailer. Plaisance was awakened around 2:25 on the morning of September 1, 1995 by a loud banging on her door. It was her neighbor, Rick Betts, who said he needed to use her phone to call 911. She had trouble unlocking the door and by the time she got it open Betts had run back over to Keener's trailer. In the mean time Pardon came running over and said, "David has been stabbed." She told Plaisance he was okay and that she didn't know how it happened. Plaisance described her as "hysterical ... just babbling like a brook." When Plaisance went over to Keener's trailer Pardon told her David was okay and didn't need medical attention. Plaisance thought David was sleeping or passed out drunk and returned home. Some time later Pardon telephoned her, crying, and said she didn't think David was breathing. Plaisance told her to call 911. In response to questions on cross-examination, Plaisance agreed that Pardon, Conner and Keener all "pretty much stayed drunk."
Richard Betts, another resident of the trailer park, testified Pardon came to his trailer that night. She told him that David was drunk and giving her a hard time, and she wanted to get away from him for a while. She stayed for 30 to 45 minutes. Shortly afterward Betts discovered she had left her shoes. He walked over to Keener's trailer and heard a "commotion" going on inside. He knocked on the door, Pardon opened it, and Betts saw Conner lying on the love seat, bleeding from a hole in his chest. Pardon told him, "I just stabbed the fuck out of David."
Virginia Keener testified that Pardon and Conner had been drinking a great deal and had been arguing. They were struggling and "fussing back and forth." She did not see Pardon stab him. When she saw David lying on the sofa she thought he had had a seizure. Pardon told her that Conner had twisted her hands back in the struggle. Pardon was trying to doctor him and said, "Virginia, I think he's dead." They tickled his feet to try to revive him. Pardon got panicky and ran to the neighbor's house.
Robert Conner, the victim's brother, stated that he lives in the same trailer park as Keener and the others. He testified that in February of 1995, he observed an argument between the defendant and the victim, in which "he [David] kind of restrained her, then she went back in the bedroom, grabbed that, you know, that sword or whatever ... just a homemade sword."[2] Robert Conner testified further that in April of 1995 the defendant confronted him with a butcher knife in each hand after having an argument with him, but he didn't call 911 because "she wasn't going to" cut him. He also stated that his brother had seizures when he couldn't get alcohol.
Pamela Williams, a forensic scientist for the Jefferson Parish Sheriff's Office and an expert in the comparison and analysis of human bodily fluids, determined there was human blood on the knife found at the scene.
Jeanie Smith testified she was staying in a friend's trailer at the trailer park at the time of the incident. On the previous morning *56 she saw Angie Pardon going in her trailer with a cup in her hand. Smith said every time she saw Angie, she "always had her mixed drinks ... in her plastic cup or her Budweiser." Smith knew that John David Conner "stayed loaded all the time ... he couldn't hold a job or anything else." He was drinking any time she saw him. She knew he had seizures. On cross examination she admitted she did not know what was in Pardon's cup that morning.
Dr. Robert Michel, an expert in pharmacology and neuropharmacology, testified that past alcohol experience develops tolerance to alcohol. The two types of broad-spectrum tolerance are functional tolerance (a decrease in the sensitivity of the brain to the effects of ethanol) and metabolic tolerance (excretion of ethanol at a faster rate). In a chronic alcoholic it takes more ethanol to produce the same effects than in a normal individual. He defined chronic alcoholic as "one who if they stopped drinking, they would go into some sort of withdrawal." Alcohol affects reaction times, motor movement and cognitive ability. Dr. Michel admitted, however, that he was not giving an opinion regarding the effects of alcohol on either the victim or the defendant in this case.

ASSIGNMENT OF ERROR NO. 1
The state's use of other crimes evidence without strict compliance with the provisions of Louisiana Code of Evidence Article 404(B) violated the appellant's due process and equal protection rights under the Ninth and Fourteenth Amendments to the United States Constitution and Article I, Section 2 and 16 of the Louisiana Constitution of 1974.
On the day before trial the State orally notified the defendant and the court of its intention to introduce evidence of prior bad acts of the defendant. Defense counsel had been given oral notice the previous week and had interviewed Robert Conner, the witness who would testify about the prior bad acts. Although defense counsel requested a hearing, the trial court ruled without conducting a hearing that the evidence would be admissible at trial. The defendant objected to the trial court's ruling. Subsequently Robert Conner testified at trial to two prior incidents in which the defendant brandished knives at the witness and his brother while arguing with them (discussed above under "Facts").
The defendant argues she was denied a fair trial because she was not given written notice within a reasonable time prior to trial and because she was not afforded a pretrial hearing in accordance with State v. Prieur, 277 So.2d 126 (La.1973).

Reasonable Notice
Defendant contends the prosecution's lack of reasonable notice violated the provisions of La.Code Evid. Art. 404(B), thereby prejudicing the appellant.
Because the introduction of evidence of other crimes may unduly prejudice the jury and deny the accused the right to a fair trial, evidence of other crimes or wrongs is generally inadmissible. State v. Prieur, supra; State v. Bourque, 622 So.2d 198, 233 (La.1993). However, when evidence of other crimes or bad acts tends to prove a material issue and has an independent relevance other than to show that the defendant is a bad person, it may be admitted by certain exceptions to this general rule. State v. Sterling, 95-673 (La.App. 5 Cir. 2/27/96); 670 So.2d 1316, 1321. La.Code Evid. Art. 404(B)(1) sets out the purposes for which evidence of other crimes or bad acts may be admitted:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
*57 In State v. Prieur, 277 So.2d 126, 130 (La.1973), the Louisiana Supreme Court established the following prerequisites for the introduction of other crimes evidence.
(1) The State shall within a reasonable time before trial furnish in writing to the defendant a statement of the acts or offenses it intends to offer, describing same with the general particularity required of an indictment or information. No such notice is required as to evidence of offenses which are a part of the res gestae, or convictions used to impeach defendant's testimony.
(2) In the written statement the State shall specify the exception to the general exclusionary rule upon which it relies for the admissibility of the evidence of other acts or offenses.
(3) Prerequisite to the admissibility of the evidence is a showing by the state that the evidence of other crimes is not merely repetitive and cumulative, is not a subterfuge for depicting the defendant's bad character or his propensity for bad behavior, and that it serves the actual purpose for which it is offered.
(4) When the evidence is admitted before the jury, the court, if requested by defense counsel, shall charge the jury as to the limited purpose for which the evidence is received and is to be considered.
(5) Moreover, the final charge to the jury shall contain a charge of the limited purpose for which the evidence was received, and the court shall at this time advise the jury that the defendant cannot be convicted for any charge other than the one named in the indictment or one responsive thereto.
In addition, the probative value of evidence of other crimes must outweigh the prejudicial effect. State v. Kahey, 436 So.2d 475, 488 (La.1983).
It is undisputed that the State failed to provide written notice of its intent to offer other crimes evidence and that trial court failed to conduct a Prieur hearing. "However, not every violation of pre-trial procedures (including Prieur violations) requires reversal, and before a defendant can complain of such a violation, he must show prejudice." State v. Sanders, 93-0001 (La.11/30/94); 648 So.2d 1272, 1284.
We find the defendant was not prejudiced by the State's dilatory notice or by the lack of a hearing. She had notice of the substance of the State's evidence against her because her trial counsel interviewed Robert Conner a week prior to trial.

Burden of Proof
The defendant also argues that the prejudicial effect of the prior acts evidence outweighed the probative value and the State did not prove by a preponderance of the evidence that the prior acts occurred, causing undue prejudice against the appellant.
The Prieur case held that the State must prove by clear and convincing evidence that the defendant committed the other crime or other bad act. 277 So.2d at 129. However, La.Code Evid. Art. 1104, added by Acts 1994, 3rd Ex.Sess. No. 51, § 2, changed the burden of proof. It provides. "The burden of proof in a pretrial hearing held in accordance with State v. Prieur, 277 So.2d 126 (La.1973), shall be identical to the burden of proof required by Federal Rules of Evidence Article IV, Rule 404."
That burden of proof was enunciated in Huddleston v. U.S., 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), as follows:
We conclude that [Rule 404(b)] evidence should be admitted if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act. * * * The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact ... by a preponderance of the evidence.
485 U.S. at 685, 690, 108 S.Ct. at 1499, 1501. See also, State v. Ledet, 96-1521 (La.App. 3 Cir. 4/2/97); 692 So.2d 1309; State v. Crawford, 95-1352 (La.App. 3 Cir. 4/3/96); 672 So.2d 197, writ denied, 96-1126 (La.10/4/96); 679 So.2d 1379.[3]
*58 Considering Robert Conner's testimony, we find the State carried its burden of proving the prior bad acts by a preponderance of the evidence.

Probative Value
The defendant further complains that the evidence of prior bad acts had no probative value because the victim was not present in the April incident, and that the incident was only offered to show that she was a bad person.
La.Code Evid. Art. 404(B)(1) provides that evidence of other crimes or wrongs may be admissible to show intent. In Kahey, supra, the court stated, "Before evidence of other crimes is admitted as proof of intent, however, three prerequisites must be satisfied: (1) the prior acts must be similar, ... (2) there must be a real and genuine contested issue of intent at trial, ... (3) the probative value of the evidence must outweigh its prejudicial effect.... [Citations omitted.]" See also State v. Ham, 93-1036 (La.App. 5 Cir. 2/15/95); 652 So.2d 15, 18, writ denied, 95-1028 (La.3/17/97); 691 So.2d 69, in which this Court concluded that evidence of the defendant's prior violent behavior toward the victim was extremely probative of his specific intent.
Second-degree murder is defined in La. R.S. 14:30.1 as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. The defendant's intent was a contested issue at trial. Therefore, the February incident in which she assaulted the victim with a "homemade sword", and the April incident in which she confronted the victim's brother with two butcher knives, were probative of her specific intent to use a knife to kill or to inflict great bodily harm.

Jury Instruction
The defendant also argues that the jury charge, with respect to the limited purpose for which the prior acts evidence was admitted, was vague, violating the requirements set forth in Prieur. That instruction was as follows:
Evidence that Angelon Pardon was involved in the commission of a prior act or acts other than the offense for which she is on trial is to be considered only for a limited purpose. The sole purpose for which such evidence may be considered is whether it tends to show her knowledge, intent, system and motive, not to prove that the defendant is a "bad woman" or that she has a "general criminal character". Remember, the accused is on trial only for the offense charged. You may not find her guilty of this offense merely because she may have committed other acts.
The defendant contends the instruction was vague because no evidence of the other purposes besides intent was introduced.
However, this charge was not vague and was an appropriate limiting instruction. See State v. Hanks, 593 So.2d 971, 974 (La.App. 5 Cir. 1992). We find no merit to this assignment.

ASSIGNMENT OF ERROR NO. 2
The evidence presented by the State was insufficient to support the verdict, denying appellant due process and equal protection of the law under the Ninth and Fourteenth Amendments to the United States Constitution and Article I, Section 2 and 16 of the Louisiana Constitution of 1974.
In this assignment of error, the defendant contends that the evidence at trial was legally insufficient to establish her specific intent to commit second degree murder.
As noted above, for second degree murder the offender must have specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1. Specific intent is "that State of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10. Specific intent also may be inferred from *59 the circumstances. State v. Andrews, 95-129 (La.App. 5 Cir. 11/15/95); 665 So.2d 454, 456.
An appellate court reviewing a claim of insufficient evidence must determine that the trial evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. * * * The elements must be sufficient that every reasonable hypothesis of innocence is excluded. * * * If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be upheld. * * * However, if the appellate court finds that no rational trier of fact, viewing all the evidence from a pro-prosecution standpoint, could have found guilt beyond a reasonable doubt, the conviction cannot constitutionally stand. [Citations omitted.]
State v. Hawkins, 96-0766 (La.1/14/97); 688 So.2d 473, 479.
In support of her claim of insufficiency of the evidence, the defendant relies on evidence that she had been drinking prior to the stabbing and that the stabbing occurred during a struggle.
As noted above, however, the evidence is overwhelming that the defendant had the specific intent to inflict great bodily harm upon the victim. She plunged a single-edged knife into the victim's chest, piercing the sternum, perforating his lung and puncturing the pulmonary artery within the pericardial sac. The wound was four to five inches deep and was described in the autopsy report as "lethal".
After viewing the evidence in the light most favorable to the prosecution, this Court may reverse the defendant's conviction only if the evidence was not sufficient to convince a rational trier of fact that all of the elements of second degree murder were proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Considering the foregoing, we find the State met its burden of proof.
The defendant also argues that the evidence at trial supported a verdict of negligent homicide, and that the court erred in refusing her requested negligent homicide charges. La. R.S. 14:32 defines negligent homicide as the "killing of a human being by criminal negligence." "Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such a disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful person under like circumstances." La. R.S. 14:12.
The judge must charge the jury with the applicable law and must provide the jury with a written list of verdicts responsive to each offense charged. La.Code Crim. P. Arts. 802,809. The only responsive verdicts to second degree murder are "guilty," "guilty of manslaughter," and "not guilty." La.Code Crim. P. Art. 814(A)(3). However, jurisprudence has held that the court should instruct the jury on negligent homicide when the evidence supports an inference of negligent homicide. Because the trial evidence did not support an inference of negligent homicide in this case, it was not necessary for the trial court charge the jury on the law of negligent homicide.

ASSIGNMENT OF ERROR NO. 3
The appellant was prejudiced by the conduct of the state which created a pattern of prosecutorial misconduct, thereby denying appellant due process and equal protection of the law under the Ninth and Fourteenth Amendments to the United States Constitution and Article I, Section 2 and 16 of the Louisiana Constitution of 1974.
In this assignment of error, the defendant argues that certain actions by the prosecutor constituted prosecutorial misconduct, warranting a reversal of her conviction.
The defendant first argues that the prosecution's "wilful failure and refusal to comply with lawful, timely discovery requests resulted in prejudice to the appellant", thereby denying her a fair trial. Specifically, she *60 states that she filed a discovery request in October 1995 and a supplemental request in April 1996. In the October request, the defendant asked to inspect tangible objects within the State's custody that would be introduced into evidence and to inspect the reports made as a result of any testing done to the tangible objects. She also requested that the State inform her of its intent to introduce evidence of other crimes against her. Finally, she asked the State to provide her with the names and addresses of any witnesses who might have exculpatory information. In April, she reiterated her request to view the evidence that was in the State's custody.
The defendant argues that despite these requests, the State failed to notify her of evidence of other crimes which it knew it was going to introduce against her. This argument has been fully addressed in our discussion of Assignment of Error No. 1.
The defendant next argues that the prosecutor committed misconduct because he did not give her Richard Betts' statement until a week prior to trial. She claims that the statement contained Brady material and was exculpatory. In his statement, Richard Betts noted that he observed the defendant "doctoring" the victim's stab wound.
The State has a duty to disclose evidence favorable to the defendant when it is material to the defendant's guilt or punishment. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); State v. Wilson, 93-617 (La.App. 5 Cir. 1/25/94); 631 So.2d 1213, 1221, writ denied 94-0476 (La.11/4/94). The defendant cites no authority to support her contention that "doctoring" the victim's wound after she stabbed him was exculpatory so as to constitute Brady material. Moreover, the defendant was aware of the "doctoring" described therein because the statement referred to her own actions.
The defendant further complains she suffered prejudice by the admission of the murder weapon and the laboratory report reflecting the test performed on the weapon. The State produced the laboratory report to defense counsel on May 21, 1996, the same day that the State received the report. In additional defense counsel was aware of the existence of the knife, since it was in photographs shown to the defense counsel about two weeks prior to trial.
La.Code Crim. P. Art. 719 obligates the State, on defense motion, to produce any reports made in connection with the case that are within the possession or knowledge of the prosecutor and that are intended for use at trial. In the event of a discovery violation, the court has the discretion to permit the discovery of the undisclosed material, order a mistrial, grant a continuance, prohibit the introduction of the undisclosed material, or any other order, except dismissal, that is appropriate. La.Code Crim. P. Art. 729.5. However, a conviction will not be reversed on the basis of a discovery violation unless prejudice is shown by the trial court's adverse ruling on the motion for a mistrial. State v. Taylor, 597 So.2d 123, 125 (La.App. 5 Cir. 1992); State v. Arnaud, 412 So.2d 1013 (La. 1982).
The trial court denied the defense's motions for a mistrial, sanctions, and a continuance on the grounds that the defendant suffered no prejudice. A mistrial is a drastic remedy and is within the discretion of the trial court, unless mandatory under La. Code Crim. P. Art. 770. It is only warranted if substantial prejudice results which would deprive the defendant of a fair trial. The trial judge is permitted great discretion to fashion an appropriate remedy when prejudicial conduct is not within La.Code Crim. P. Art. 770. State v. Narcisse, 426 So.2d 118, 133, cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983).
In this case, the defendant cannot show prejudice by the introduction of either the laboratory report or the murder weapon. She was not surprised by the introduction of the knife because her counsel had viewed photographs of it approximately two weeks prior to trial. Additionally, defense counsel received the laboratory report on the same day that the State received it.
The defendant next contends that the prosecutor's statements in closing arguments *61 caused such prejudice that the defendant's conviction should be reversed.
According to La.Code Crim. P. Art. 774, the argument must be confined to the evidence or lack thereof, the conclusions which may be inferred, and the applicable law. This article also prohibits an appeal to prejudice. La.Code Crim. P. Art. 771 provides that upon request, the court shall admonish the jury to disregard an irrelevant, immaterial, or potentially prejudicial remark made in the presence of the jury or grant the defendant's motion for a mistrial if warranted.
In closing argument, the prosecutor stated that Richard Betts heard Virginia Keener say, "You [the defendant] did not have to kill him." The trial court sustained defense counsel's hearsay objection at that time.
If the Court finds that the prosecutor improperly referred to the Statement in closing argument, the defendant must still show substantial prejudice in order to have her conviction reversed. State v. Perkins, 94-366 (La.App. 5 Cir. 2/15/95); 652 So.2d 21, 26. Although the trial court denied the defendant's motion for a mistrial, the court fully admonished the jury, and no prejudice resulted from any improper reference.
The defendant further complains that she suffered prejudice from the prosecutor's personal attacks upon her trial counsel. The relevant portion of the closing argument follows:
MR. WILLIAMS [prosecutor]:
I hope none of you ever have to sit in a courtroom, as David Conner's brother did, and have to hear a fellow attack him. Accuse him of being responsible for his brother's death. Make fun of his accent to the point where the man started crying and he had to leave the courtroom. I hope you never have to go through that. Shame on you.
[At this point, the trial court sustained defense counsel's objection.]
MR. WILLIAMS:
Oh, shame
THE COURT:
Refrain from that kind of conduct.
MR. WILLIAMS:
I hope you never have to go through that. When that man over there, that excuse for a lawyer got up and blamed
The trial court again sustained the defense counsel's objection and denied the motion for a mistrial. The court further admonished the prosecutor to refrain from that kind of conduct.
The prosecutor then stated, "Goes to show you where he's coming from. Win at any cost. I'll say whatever I can." The trial court again sustained the defense counsel's objection and denied the motion for a mistrial. The court told the prosecutor, "One more time, Mr. Williams, and I'm going to hold you in contempt."
The defendant also argues that on rebuttal, the prosecutor's reference to another crime he had prosecuted prejudiced the jury. The prosecutor stated:
MR. WILLIAMS:
I just I had a flashback, ladies and gentlemen, as I heard this defense of this lady when he said, how could she have an intent to kill and stay right there? How could she kill somebody with witnesses? A couple of years ago, I prosecuted a kid by the name of Joel Durham
MR.SOMOZA [defense counsel]: Objection.
MR. WILLIAMS:  who murdered
MR. SOMOZA: Objection.
MR. WILLIAMS:  a clerk.
MR. SOMOZA: Objection, Your Honor. That has absolutelywhat the Joel Durham case is, has absolutely nothing to do with this, Your Honor.
MR. WILLIAMS: It has a lot to more to do with this case than ninety-nine percent of what he said.
THE COURT: Objection overruled. It's just argument.
MR. SOMOZA:

*62 Note our objection for the record, Your Honor.
MR. WILLIAMS:
And, you know, Joel Durham shot Leo Kern at McDonald's on Severn, in front of his girl friend, in front of about twenty or thirty customers and claimed he was drunk. That was his defense and the gun accidentally went off.
Thereafter, the court again overruled the defense counsel's objection.
According to La.Code Crim. P. Art. 774, the State's rebuttal is limited to answering the defendant's argument. In his closing argument, defense counsel argued the intoxication defense to the jury. Although the prosecutor went farther than necessary in the rebuttal, the reference to the other case was simply an example of a defendant whose defense to a murder charge was intoxication.
Before a conviction is reversed on the grounds of improper argument, prejudice must be shown. Perkins, supra, at 25. Although the trial court denied the defendant's motions for mistrial, the court admonished the prosecutor. A mistrial is a drastic remedy warranted under certain circumstances. Narcisse, supra, at 133. The conduct of which defendant complains is not mandatory grounds for a mistrial under La.C.Cr.P. art. 770.
In addition, the court instructed the jury that statements and arguments by counsel are not evidence and that jurors should not be influenced by passion or prejudice. The instruction cured any error and the defendant therefore suffered no prejudice.
Considering the foregoing, we find no merit to this assignment.

ASSIGNMENT OF ERROR NO. 4
Appellant's statement to Officer Este was introduced at trial, denying appellant due process of the law under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 2, 13, and 16 of the Louisiana Constitution of 1974.
This assignment refers to the State's introduction of defendant's statement to Officer Este shortly after he arrived on the scene. Este testified he asked the defendant whether she knew what had happened. She replied "that she had left her bedroom, walked down a hallway, found Mr. Conner laying on a sofa. And she had no knowledge of how he was on the sofa or how he was in that condition." The trial court had previously denied the motion to suppress this statement and overruled defense counsel's objection to Officer Este's testimony.
Defendant claims she was not advised of her constitutional rights prior to telling Officer Este about the incident. To resolve this assignment of error, it must be determined whether the defendant was "in custody" when she spoke to Officer Este.
Before an inculpatory statement is introduced at trial, the State must prove that the declarant was advised of his or her Miranda rights prior to custodial interrogation. State v. Castillo, 389 So.2d 1307, 1310 (La.1980), cert. denied, 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1004 (1981). See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); La. Const. Art. 1, § 13. Custodial interrogation means "questioning initiated by law enforcement officers after a person has been deprived of his freedom of action in any significant way. Spontaneous and voluntary statements, not given as a result of police interrogation or compelling influence, are admissible in evidence without Miranda warnings even where a defendant is in custody." Castillo, supra.
This Court has defined custodial situations as follows:

Custodial interrogation includes situations which fall short of an actual arrest but where the accused is questioned by the police in a setting which indicated that he has been deprived of his freedom of action in a significant way. [Citations omitted; emphasis in original.] This determination is made on a case by case basis, and the factors involved include:
1. Whether there was probable cause to arrest prior to questioning;
2. Whether the statements and actions of the police indicate an intent to hold or restrain the accused;

*63 3. Whether the accused reasonably believed he was restrained, and
4. The extent to which the investigation had focused on the accused.
State v. Foret, 96-281 (La.App. 5 Cir. 11/14/96); 685 So.2d 210, 222.
Considering the evidence presented at trial, the defendant was not in custody at the time she answered Este's general question regarding the events which had transpired. Because no information had been given to Este regarding suspects and the situation was not immediately obvious to Este from the scene, there was no probable cause to arrest the defendant. Este's actions did not indicate an intent to detain her as a suspect because the question was of a general nature. He made no attempt to restrain the defendant and in fact, even after she gave the statement, he only asked her to step outside so that he could secure the scene. Since the defendant was not in custody, Officer Este was not required to advise the defendant of her Miranda rights. State v. Foret, supra. Therefore, the statement was admissible.

ASSIGNMENT OF ERROR NO. 5
Appellant requests review of the record for errors patent. She assigns as error patent the trial court's failure to read her arraignment plea at prior to the opening statements.
La.Code Crim. P. Art. 765 states, in pertinent part: "The normal order of trial shall be as follows: (1) The selection and swearing of the jury; (2) The reading of the indictment; (3) The reading of the defendant's plea on arraignment; (4) The opening statements of the state and of the defendant; * * *"
After the jury was sworn the trial court advised them in the preliminary instructions that the defendant had entered a plea of "not guilty" to the indictment for second degree murder. Further, after opening statements the clerk read the defendant's plea to the jury. Therefore, any technical error was corrected by the trial judge and the defendant was not prejudiced.
A review of the record reveals another error patent. At sentencing the trial court failed to give the defendant credit for time spent in custody, as required by La. Code Crim. P. Art. 880. According to our usual procedure, therefore, we amend the defendant's sentence to allow her credit for time served prior to the imposition of sentence. State v. Wilson, 96-373 (La.App. 5 Cir. 10/29/96); 683 So.2d 870.

DECREE
For the foregoing reasons, the defendant's conviction is affirmed and the sentence is amended to provide for credit for time served.
CONVICTION AFFIRMED, SENTENCE AMENDED.
NOTES
[1] In the record Angelon Pardon is sometimes called "Angel" or "Angie" and John David Conner is sometimes called "David."
[2] At that point, the State showed the object to which the witness referred. Although the defendant States in her brief that the object was introduced into evidence, a careful review of the record reveals that the object was not introduced at trial.
[3] Because La.Code Evid. Art. 1104 refers to the burden of proof at a hearing only, the impact of this article on the burden of proof at trial is unknown at this point. See Pugh, Force, Rault, & Triche, Handbook on Louisiana Evidence Law, (St. Paul, West Publishing Co.), n. 2 (3d ed.1997). Nevertheless, the defendant apparently argues that the State must prove the prior bad acts by a preponderance of the evidence at trial.